Kenneth Gerald STOREY, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20932.

United States Court of Appeals
Ninth Circuit.

Dec. 5, 1966.

Rehearing Denied Jan. 26, 1967.

Ralph K. Helge, Pasadena, Cal., for appellant.

Eugene G. Cushing, U. S. Atty., Michael J. Swofford, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before POPE, MERRILL and ELY, Circuit Judges.

POPE, Circuit Judge.

The above named appellant was convicted in the court below of having refused to submit to induction into the armed forces of the United States, an offense defined in Title 50 U.S.C. App. § 462. He was sentenced to imprisonment for a term of years from which judgment he appeals.

The appellant registered with his local board of the Selective Service System on February 4, 1958. At that time he was employed by the Boeing Airplane Company at Seattle in making drawings for ground support equipment for minuteman missiles. Occasionally thereafter he kept the local board informed of his continued employment by that company in the performance of similar duties having to do with the missile program. He continued that employment until November, 1963, when he transferred to work on unarmed transport planes.[1] He finally quit Boeing about March 31, 1964.

On July 7, 1958, following the filing of his selective service questionnaire, he was classified by the board in Class 1–A, (available for military service). At that time no claim relating to conscientious objection to military service had been made.

A little more than three years later appellant was ordered to report for an armed forces physical examination and he was advised that he had been found acceptable for induction in the armed forces. On March 25, 1963, he advised his local board that he had become a conscientious objector and requested that his classification be changed to 1–O (conscientious objector available for civilian work) and that the special forms for conscientious objectors be sent to him. These forms he returned on April 4, 1963, fully executed by him. The board on April 15, 1963, again classified him 1–A. On April 18, 1963, he wrote to the board as follows: "Dear Sirs: I cannot accept the 1–A classification you have given me. It is against my religious beliefs to come under military authority in either a combatant or non-combatant capacity. I therefore request a personal appearance hearing so that I might state my reasons for a 1–O draft classification. If after my personal appearance hearing you still have not reclassified me as requested, please con-

sider this a notice of appeal." He was granted the personal appearance requested and appeared before the board on May 20, 1963. The board determined that he should be retained in Class 1–A.

It will be noted from the letter last quoted that he had given a notice of appeal and his file and records before the local board were transmitted to the appeal board. The appeal board on July 22, 1963, notified the United States Attorney that it had the file and requested the advisory recommendation from the Department of Justice.

On May 28, 1963, appellant wrote a letter addressed to the local board which began as follows: "In regards to the appeal board for a change in my draft status from 1–A to 1–O"; this was followed by a statement that he was baptized May 26, 1963, in the Radio Church of God and that it was a part of the constitution of that church that its members are forbidden, and conscientiously refuse, to bear arms or come under the military authority. This communication was transferred to the appeal board with the rest of the local board files.

On December 4, 1963, the registrant appeared before a special hearing officer of the Department of Justice. After this hearing had been concluded, the officer found that the registrant was sincere in his opposition to combatant military training or service but not in his claimed opposition to other forms of non-combatant service. Thereafter, on March 31, 1964, the registrant quit his job at the Boeing Company. On April 20, 1964, the appeal board classified the registrant in Class 1–A–O (conscientious objector available for non-combatant military service only). Thereafter he was ordered to report for induction; he refused and his prosecution followed.

Appellant contends on this appeal that he was denied certain rights which he had under selective service regulations

---

1. He testified that the reason for this transfer was: "I felt that it would be a better job in the eyes of my draft board." He was asked: "Was the only reason you wanted that because it would make you look better in the eyes of your draft board?" He answered "Yes".

and that there was no basis in fact for his 1–A–O classification.

The first contention made has to do with a letter which the appellant wrote to the local board on April 3, 1963, in which he referred to his position as an employee working on electrical test equipment used in connection with a minuteman missile. He said: "If you believe this to be defense work, then I will transfer to the Dyna Sour Program (which is for peaceful use) or quit immediately and take my chances of finding another job. Please let me know if my job is considered defense work and what I should do." The board did not respond to that letter. Appellant claims that the failure of the board to answer this inquiry had the effect of making his ultimate classification illegal.

We think it is obvious that appellant had full knowledge of the work which he was doing. Moreover, just a few days prior to the above request he had written a letter to the board, which it received March 25, 1963, in which he stated specifically, as we note hereafter, that his job was "connected with warfare." Whether he should continue in that work would involve an exercise of his own conscience upon which he was not entitled to advice from the local board.

Another contention made is that appellant was denied due process in that he was never furnished a copy of a certain letter mailed to the appeal board and concerning which he had no information. The contention is that the letter contained ostensibly derogatory and adverse evidence of which he should have been informed. The letter was written by a minister of appellant's church. The substance of the letter is set forth in the margin.[2] We are unable to perceive the basis for this contention. The letter in our view was in no manner derogatory or adverse to the appellant and was obviously written for the purpose of aiding him in his demand for a 1–O classification. The last sentence of the letter is entirely consistent with the contention which the appellant has made throughout, namely, that his continued work at Boeing on the missile project was based on a mistake or misunderstanding.[3]

Furthermore this was fully explained to the appeal board by a letter from the appellant's attorney dated March 30, 1964, and received by the board two days later. Mr. Helge, the attorney, elaborated upon and explained the misunderstanding between the registrant and his minister concerning his minuteman employment, the topic of the controversy. The board also had additional letters written by the appellant and presented to the board which explained that his Boeing employment had been terminated and which reviewed his entire religious history. It is not apparent to us that appellant was denied any right through

2. "The Resume of the Inquiry of Mr. Kenneth Gerald Storey, Jr., Conscientious Objector, page 4, eludes to the assumption that I sanctioned Mr. Storey working on missiles either directly or indirectly. Neither the Radio Church of God nor I teach that anyone should work on anything even remotely connected to the military. All the details were not explained concerning his work. I was under the impression that the capacity of his work was for civilian rather than military purposes."

3. The Department of Justice résumé, to which the letter refers, mentions the fact that a co-worker of appellant, (evidently the witness Lindberg) who had discussed conscientious objection with the appellant while they were at work, stated that "he had wondered about claiming conscientious objection while working at the Boeing Company and discussed this with the minister. The minister explained to him that owning a gun and keeping it in a safe place is different from taking it out and shooting someone and as long as a person is not directly involved in working on an implement of war or helping to create it, it is all right to work at the Boeing Company. He believed the registrant feels the same way about this." Appellant does not question the fact that there was a discussion of these matters with a minister. At the trial appellant attempted to prove that there was such a discussion and made an offer of proof to that effect which was rejected.

the failure to furnish him a copy of the minister's letter.

 The argument on this point lacks basis for another reason. There is nothing to show that the appeal board ever considered the letter from the minister here in question. The presumption is, of course, that the appeal board acted regularly and in accordance with the regulations. If, as appellant suggests, this letter was something volunteered by the minister (in hostility to the appellant) then under 32 C.F.R. § 1626.24 the appeal board was prohibited from considering it. That section lists specifically the only information which the appeal board is permitted to consider and that list does not include letters from outside persons addressed to the board.[4]

The only basis on which the appeal board could have considered it would be by the board's finding that the letter was a part of the appellant's reply to the recommendation of the Department of Justice. Such a reply is listed in the section mentioned as an item which the appeal board can consider.[5]

Under date of March 30, 1964, appellant's attorney wrote the appeal board, commenting upon the same subject, and referring to the same Department of Justice report, saying: "Upon investigation of this fact it was determined that the permission that was granted to the registrant to do this work was actually based upon a misunderstanding, between the minister and the registrant, as to the type of work that was being done." The minister's letter previously referred to is dated April 2, 1964, and was received by the appeal board on April 3. If it could be assumed that the appeal board paid any attention to the minister's letter it would seem that the board could well believe that the minister's letter was written in aid of appellant's letter of March 31 and of the attorney's letter of March 30 and at the appellant's instance. It is true that the appellant testified at the trial that he never knew about the minister's letter but the trial court was not obliged to believe that, and what is more important, the appeal board was not obliged to draw any such inference from the circumstances here mentioned.

 It is next contended that the local board acted arbitrarily and violated appellant's rights under the applicable regulations when it refused to reopen the appellant's classification and grant him a further hearing after receipt of his letter of April 18, 1963, quoted above. The regulation here applicable is 32 C.F.R. § 1625.2 which provides in part as follows: "The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classi-

---

4. See Title 32 § 1626.24: " * * * (b) In reviewing the appeal and classifying the registrant, the appeal board shall not receive or consider any information other than the following: (1) Information contained in the record received from the local board. (2) General information concerning economic, industrial, and social conditions. (3) Any advisory recommendation from the Department of Justice under § 1626.25. (4) Any reply to the recommendation of the Department of Justice received from the registrant under § 1626.25."

5. It is apparent that the appeal board might well have found and believed, as it had a right to do, that this letter from the minister was written for the purpose of helping the appellant and that it was sent at his instance and with his knowledge. The interesting facts are that after the registrant was furnished with the Department of Justice's recommendation the board received replies from the registrant or on his behalf, all of them written about the same time and received within a period of three days. They all communicated to the board the appellant's contention that there had been a misunderstanding by his minister with respect to the type of work which appellant had been doing. Under date of March 31, 1964, appellant wrote the board a long letter referring to the Department of Justice report and said: "My minister has read these reports and now realizes that this job would be termed 'defense work' and that he misunderstood the type of work this was."

fied, which, if true, would justify a change in the registrant's classification. * * * "

■■ Aside from the fact that the letter shows on its face that it was intended for transmittal to the appeal board, there are other reasons why the appellant is not entitled here to rely upon any contention that he should have been granted a further hearing. As this court noted in Shaw v. United States, 9 Cir., 264 F.2d 118, the requirement that reopening be based "upon the written request of the registrant" is mandatory, that is to say, there must be a request in writing to reopen.[6] In the case before us there was no such written request. "He advised, but did not request." Taylor v. United States, 9 Cir., 285 F.2d 703, 704. At that time the appeal had been taken and the matter was no longer before the local board for action. The letter was forwarded to the appeal board. It was before that board when it made its decision on April 20, 1964.

■ Again it must be noted that when the appellant's draft status was a question before the local board, he had been classified 1–A. All of his communications to the local board were designed to persuade the local board to take contrary action and give him a conscien-

tious objector's status. But that classification made by the local board is not before us now, nor was it a question properly before the district court. The consequence is that which was stated by this court in Cramer v. France, 9 Cir., 148 F.2d 801, 805. In that case the court noted that the hearing before the appeal board was *de novo*.[7] We then stated: "Though there is no summary of this examination by the Board, the question is whether appellant has shown, as required by section 627.13 of the regulations, that there are any facts stated in the oral examination 'which do not appear in the written information in the file' of appellant. Appellant has shown no such facts and hence has not shown that any summary was required of the local board." Under these circumstances "the final classification had the effect of rendering harmless any errors committed in the earlier classification." Evans v. United States, 9 Cir., 252 F.2d 509.

The rule here announced has been followed in numerous other cases. Tomlinson v. United States, 9 Cir., 216 F.2d 12, 16; Reed v. United States, 9 Cir., 205 F.2d 216, 218; Tyrrell v. United States, 9 Cir., 200 F.2d 8, 11; United States ex rel. Bodenstein v. Nichols, 3 Cir., 151 F.2d 155, 159; DeRemer v. United States, 8 Cir., 340 F.2d 712, 719.[8]

---

6. The court said in the Shaw case: "This language of the Code is not permissive, but mandatory, so far as the requirement of a written request is concerned." After the case had been submitted to us, appellant filed a motion to supply "an omitted portion of the transcript." The accompanying affidavit states that this portion, if supplied, would show that when appellant argued to the trial court that the Board should have reopened the classification the Government objected that no request for a reopening had been filed, and that the trial court overruled the objection. The contention of the motion is that since the Government "never properly preserved this alleged error" it is barred from raising the point of no demand.

There is no basis for this novel position. The Government is not appealing here. It never can appeal in a case of

this kind; there is no reason for its taking exceptions. Furthermore, as the trial court made no findings, there is no way to show that its ruling here referred to was other than tentative. Since we affirm, it matters not that our reasons differ from those of the trial court. See Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224, and S & S Logging Co. Inc. v. Barker, 9 Cir., 366 F.2d 617 (Aug. 24, 1966).

7. In Cox v. Wedemeyer, 192 F.2d 920, 922, this court discussed that aspect of the functions of an appeal board noting that on an appeal that board is required to proceed to determine item by item whether the registrant belonged in any of the listed classes.

8. "Regardless, the question of possible prejudice on the part of the Local Board is not available to appellant to attack his

On June 5, 1964, the appellant's attorney wrote to the local board requesting a reopening of the matter of appellant's classification. The basis for the request was that the appellant's employment by Boeing had been due to a misunderstanding with his minister as to how the church viewed such employment; and that subsequently he had terminated his position with the company. The attorney asserted that these facts occurred while the matter was pending with the appeal board but subsequent to the 30 day period allowed for filing reply or objections to the Department of Justice recommendation.

■ Aside from the fact that these assertions of new developments were incorrect (they had all been covered in timely letters sent to the appeal board) the request for reopening came after the appellant was ordered to report for induction into the armed forces. This order was issued May 25, 1964, and he was ordered to report on June 9, 1964. The regulations provide (32 C.F.R. 1625.2): "[T]he classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * or an Order to Report for Civilian Work * * * unless the local board first specifically finds there has been a change of the registrant's status resulting from circumstances over which the registrant had no control." Obviously there was no such change of status here and the board was without authority to grant the reopening requested on June 5, 1964. The regulation last referred to has been held valid by this court. Feuer v. United States, 9 Cir., 208 F.2d 719, 721; Boyd v. United States, 9 Cir., 269 F.2d 607.

The appellant has called our attention to the case of United States v. Gearey, 368 F.2d 144, decided by the Court of Appeals of the Second Circuit on October 21, 1966. That case is plainly distinguishable from the present one. What that court held is that a conscientious objector claim which ripened after the order was sent was a sufficient involuntary change of status to merit reopening under the special circumstances mentioned in that regulation.[9] The Gearey case is not relevant here.

On June 19, 1964, the local board wrote to the attorney in reply to his letter of June 5, stating: "Serious consideration was given your request but it was their determination that no action would be taken as information submitted did not warrant requesting the authority of the State Director to reopen the classification." Appellant argues that some fatal irregularity occurred because of the erroneous reference to a request to the state director. It is obvious that the complete answer to the attorney's request for a reopening is that which we have given here, namely, that the appellant had been ordered for induction and at that time the board was without power to reopen his case without making the findings required by 32 C.F.R. 1625.02. Such findings could not have been made on the basis of the information presented in the attorney's letter of June 5. Appellant was in no way prejudiced by the erroneous reference to the state director.

■ It is contended that the 1–A–O classification given the appellant by the appeal board was made without a basis in fact. It should be noted here that in making this classification the appeal board recognized a conscientious objec-

I-A-O classification. That classification was made by the Appeal Board, not appellant's Local Board. It is universally held that the Appeal Board considers matters of classification *de novo* and its classification is one of first instance, not a mere affirmance or reversal of the Local Board, and that any such prejudice on the local level is cured by a fair consideration on the appeal. [citing cases] As there is no allegation of prejudice here

made on the part of the Appeal Board it is evident that any detrimental attitude on the part of the Local Board, if such there was, is insufficient reason to attack appellant's classification."

9. Incidentally, the Seventh Circuit, in United States v. Schoebel, 201 F.2d 31, 32–33, disapproved a similar contention as a "strained interpretation of the regulation". See Boyd v. United States, supra, 269 F. 2d at p. 610.

tion to combatant military service. However, it rejected his claim that he was conscientiously opposed also to noncombatant service. The question is whether there was no basis in fact for the drawing of this distinction by the appeal board. The test to be applied by us in answering that question was stated by the Supreme Court in Witmer v. United States, 348 U.S. 375, 380–382, 75 S.Ct. 392, 395–396, 99 L.Ed. 428. There the Court said: "The primary question here is whether, under the facts of this case, the narrow scope of review given this Court permits us to overturn the Selective Service System's refusal to grant petitioner conscientious objector status. It is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, [1953], 346 U.S. 389, 396, [74 S.Ct. 152, 157, 98 L.Ed. 132]. The classification can be overturned only if it has 'no basis in fact.' * * *. Here the registrant cannot make out a prima facie case from objective facts alone, because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is 'affirmative evidence * * * that a registrant has not painted a complete or accurate picture * * *.' "

In Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 427, 90 L.Ed. 567, the Court said that "courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in con-

formity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

■ We think that the board had before it affirmative evidence that in claiming conscientious objection to noncombatant service the registrant did not paint a complete or accurate picture. The record shows that for a long time the appellant was employed by the Boeing Company in the manufacture of minuteman missiles; he was so employed as early as October 29, 1960, as disclosed by a report to the board. Again he made a similar report to the board on April 6, 1961, and on November 3, 1961. He evidently continued in that employment before he made a similar report as to his employment on March 1, 1963. Up to that time he had made no claim of conscientious objection to the military service. His first assertion of this was in a letter received by the board on March 25, 1963, when he stated that he was a conscientious objector and requested a 1–O classification and that special forms be sent to him.

This letter is a most revealing one. In it he said: "I am currently working at Boeing's as a draftsman in the minuteman section. As soon as I can find another job, that is not connected with warfare, I will quit Boeing's". In short, he knew he was "connected with warfare", yet his conscientious objections, if any, were less important than having a job. If he could not find another job, presumably he would stay on.

On April 3, thereafter, he wrote the letter previously mentioned asking the board to inform him whether his position on the minuteman missile program was classified as "defense work". The board had plenty of basis in fact for believing that the registrant knew what his work was, knew what the missile was, knew that he was working on it, and yet failed to show sufficient conscientious objec-

tion to the doing of that work absent another job.[10]

In White v. United States, 9 Cir., 215 F.2d 782, 785–786, the appellant who had been placed in a 1–A–O classification defended his prosecution for refusal to be inducted on the ground that there was no basis in fact for his classification. In that case the registrant was an employee of Douglas Aircraft engaged in the manufacture of military equipment. We held that in view of his experiencing no difficulty working in the manufacture of munitions for war he could not claim he was conscientiously opposed to non-combatant participation in war activities. For other cases to the same effect see Blalock v. United States, 4 Cir., 247 F.2d 615, 619; Meredith v. United States, 4 Cir., 247 F.2d 622, 623; Roberson v. United States, 10 Cir., 208 F.2d 166; United States v. Neverline, 3 Cir., 266 F.2d 180.

It is true that after the appellant had received the Department of Justice recommendation that he be classified in 1–A–O, he then quit his job with the Boeing Company and made other communications previously mentioned directed to the appeal board asserting his conscientious objection to non-combatant service. The long time which it took the appellant to get around to this could properly be taken into consideration by the appeal board.

One reason for providing that one claiming to be a conscientious objector shall appear before a hearing officer is to give the officer an opportunity to observe the registrant's demeanor and thus judge his sincerity and his general mental attitude. In this case the hearing officer had reason to question the appellant's claim to conscientious objection to non-combatant service, for his report notes that "the registrant appeared to be embarrassed and uncertain in his justification of his previous assignment in the missile area of the Boeing Company". A co-worker at Boeing, who also belonged to appellant's church, told the Department investigator that the two of them had discussed the propriety of their work in the missile plant. He vigorously defended that work for himself and stated appellant felt the same way about it. (See footnote 3, supra.) "He added that the Bible does not mention missiles and therefore working at the Boeing Company would not be contrary to God's law."

As noted in Witmer v. United States, supra, the question before us is not whether in our judgment we would find substantial evidence to support the board's determination. We cannot say on this record that the classification had no basis in fact.

■ Appellant makes some other claims in support of his appeal none of which has sufficient merit to require further discussion here. For instance, appellant asserts that there was violation of the regulations and of his rights because of the failure of the Department of Justice hearing officer to advise him of his right to an attorney. Appellant's own brief contains a copy of the notice of hearing before the hearing officer which was furnished to the appellant. As plainly as can be stated, this notice says: "In addition to his witnesses, the registrant may have an attorney, relative, friend, or other advisor present at the hearing." The suggestion that the appellant at the time of that hearing should have been given the precautions and warnings described in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, is plainly frivolous

---

10. The Department of Justice résumé, which was before the hearing officer and the appeal board, shows that appellant evidenced no signs of compunction about his work on missiles. Thus various co-workers of appellant said that he must have realized his work was involved with the launching of missiles, that the missile was an engine of war, yet he had never mentioned that his convictions would prevent this type of work. All this was six months or a year after appellant had joined his religious group.

264

for we do not deal here with proceedings which were criminal in character. Permitting exemption for conscientious objectors is a matter of grace and all these proceedings are designed to facilitate the granting of this grace.

Since we find no error in this record the judgment is affirmed.