UNITED STATES of America,
Plaintiff,

v.

Thomas William WELLER, Defendant.

No. 42614.

United States District Court
N. D. California.

Sept. 19, 1969.

ORDER GRANTING MOTION TO DISMISS INDICTMENT.

PECKHAM, District Judge.

The Defendant has made a motion to dismiss the indictment against him pursuant to Fed.R.Crim.P. 12. Defendant contends that his constitutional rights were violated because his request to have his attorney present during the personal appearance on his conscientious objector claim was denied pursuant to 32 C.F.R. § 1624.1(b) which provides:

* * * no registrant may be represented before the Local Board by anyone acting as attorney or legal counsel.

Alternatively, the defendant contends that the section of 1624.1(b) quoted above is not authorized by the Selective Service Act of 1967, 50 U.S.C.A. App. § 451 et seq.

The pertinent facts, which are apparent from the Defendant's Selective Service file, are as follows: The Defendant requested, received and filed with his Local Board a Form 150 (Special Form for Conscientious Objector). The Board classified the Defendant I–A and the Defendant requested a personal appearance. The Board scheduled the appearance for November 8, 1967. The Board received a letter from the Defendant's attorney on November 6, 1967 which requested that the Board grant Defendant's attorney permission to be present at the personal appearance to advise him with respect to his rights. Relying on 32 C.F.R. § 1624.1(b), the Board denied

the requested permission. Following the hearing, the Defendant's Board declined to reopen his case and retained him in class I–A. The Defendant then unsuccessfully appealed this classification.

There is no question that the hearing before the Local Board on a registrant's claim for conscientious objector status is a critical stage of an administrative process at which substantial rights are adjudicated. The failure to sustain one's claim can result in requiring a registrant to serve his country in a manner different both in type (a I–A–O serves in the armed services in a non-combatant capacity) and in hazard (a I–O performs non-military alternative service in the national interest).

In Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), the Supreme Court held that the administrative denial of traditional forms of fair procedure, particularly where substantial constitutional doubts are raised, are not to be presumed to be authorized *"by implication or without the most explicit action by the Nation's lawmakers, even in areas where it is possible that the Constitution presents no inhibition."* The *Greene* case dealt with the administrative withdrawal of security clearance causing the plaintiff's loss of a job in private industry, and the procedural safeguards which were missing were the right to confrontation and cross-examination of those who gave information adverse to Mr. Greene. Certainly, failing to establish a conscientious objector claim is as serious as the impact of loss

of the right to have access to classified information (hardly what most people would consider to be a "right"). The right to counsel is also a traditional safeguard, and the only apparent reason it was not dealt with in *Greene* is because Mr. Greene was represented by counsel in all of his proceedings. Indeed, of what value would be the right to confrontation and cross-examination without the right to counsel skilled in those arts? It seems clear that the affirmative denial of the right to be represented by retained counsel, even in a "civil" proceeding, where substantial loss of liberty may be at stake, is subject to grave constitutional doubts. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

■■ In spite of the fact that the *Greene* court did not decide that the plaintiff had a *constitutional* right to confrontation and cross-examination, the court held that plaintiff had such rights because the "Nation's lawmakers" did not *explicitly* authorize their withdrawal by the Defense Department. Accordingly, in the case at bar, the only "lawmakers" who could explicitly authorize the denial of counsel in hearings before the local draft boards are Congress, not the President, since the President could not *raise an army, through induction, without the authority of Congressional legislation.*[1]

However, nowhere in the Act has Congress expressly denied the right to counsel or expressly delegated the power to do so to the President. The only possi-

---

1. While under Article 2 § 2 of the Constitution the President is Commander in Chief of the Armed Forces (See Cafeteria and Restaurant Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 [1961]), under Article 1 § 8, Congress, not the President, (See Swaim v. United States, 28 Ct.Cl. 173, Aff. 165 U.S. 553, 17 S.Ct. 448, 41 L.Ed. 823 (1893); 6 Op. Atty.Gen. 10 (1853)), is given the power to provide for the common defense, to declare war, to raise and support armies, to provide and maintain a navy and to make all laws necessary and proper for the execution of those powers. It is pursuant to these Congressional powers that the Selective Service Act of 1967 was passed, and it was obviously upon the premise that only Congress could raise an army that Congress found it necessary to authorize the President "to select and induct into the Armed Forces of the United States for training and service in the manner provided in this title * * * such number of persons as may be required to provide and maintain the strength of the Armed Forces." 50 U.S. C.A. App. § 454(a).

ble sources of such a delegation are Section 1(c) which states that service should be "in accordance with a system of selection which is fair and just * * *," and section 10(b) (3) which provides "such local boards * * * shall, under rules and regulations prescribed by the President, have the power * * * to hear and determine * * * all questions and claims with respect to * * * exemption * * *." These sections clearly are not "explicit action by the Nation's lawmakers" (in this case Congress) taking the constitutionally-suspect action of removing the right to be represented by counsel.

In *Greene* the argument was made that delegation of the power pruning the traditional procedural rights should be found because of Congressional and Presidential acquiescence in the program. The court 360 U.S. at 506, 507, 79 S.Ct. at 1418, dismissed the contention as follows:

> If acquiescence or implied ratification were enough to show delegation of authority to take actions within the area of questionable constitutionality, we might agree with respondents that delegation has been shown here. * * * We deal here with substantial restraints on employment opportunities of numerous persons imposed in a manner which is in conflict with our long-accepted notions of fair procedures. Before we are asked to judge whether, in the context of security clearance cases, a person may be deprived of the right to follow his chosen profession without full hearings where accusers may be confronted, it must be made clear that the President or Congress, *within their respective constitutional powers*, specifically has decided that the imposed procedures are necessary and warranted and has authorized their use. * * * Such decisions cannot be assumed by acquiescence or non-action. * * * They must be made explicitly not only to assure that individuals are not deprived of cherished rights under procedures not actually authorized * * * but also because explicit action, especially in areas of doubtful constitutionality, requires careful and purposeful consideration by those responsible for enacting and implementing our laws. Without explicit action by lawmakers, decisions of great constitutional import and effect would be relegated by default to administrators who, under our system of government are not endowed with authority to decide them. [Emphasis added.]

*Greene*, therefore, is persuasive authority for the proposition that 32 C.F.R. § 1624.1(b) is not authorized by the statute.

Six years prior to *Greene* the Supreme Court decided United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953) (5-to-3 decision). The defendant contended that the requirement of a "hearing" under the then-existing section 6(j) of the Selective Service Act meant that he should be entitled to cross-examine those who gave statements to the F.B.I. deleterious to his claim. The Court denied this claim, feeling that the "6(j) hearing" was not a "determinative" one and that there was "no time" for "litigious interruption." The first reason is not applicable to our situation because now the hearing before the board is determinative. Reason two is not persuasive and was not followed in *Greene*. If litigious delays of potential members of the armed forces are of concern, *a fortiori* such delays regarding those already in the service are of equal if not greater concern. Yet, counsel participate in hearings with respect to members of the army who claim conscientious objector status. Army Regs. 635–20, para. 4(d) (Jan. 22, 1969). Finally, *Nugent* was not a "right to counsel" case, and the governmental interest in protecting sources of confidential information is more compelling than preventing a possible slight delay caused by the presence of retained counsel at a registrant's personal appearance. . Indeed, counsel was permit-

ted to participate in the "6(j) hearings". Storey v. United States, 370 F. 2d 255 (9th Cir.1966).[2] As Mr. Justice Frankfurter so eloquently stated in his dissent:

> Considering the traditionally high respect that dissent, and particularly religious dissent, has enjoyed in our view of a free society, this Court ought not to reject a construction of congressional language which assures justice in cases where the sincerity of another's religious conviction is at stake, and where prison may be the alternative to an abandonment of conscience. *The enemy is not yet so near the gate that we should allow respect for traditions of fairness, which has heretofore prevailed in this country, to be overborne by military exigencies.*

> 346 U.S. at 12, 13, 73 S.Ct. at 997. [Emphasis added.]

The right to counsel has been considered increasingly important in recent years. Indeed, the Supreme Court has held it to be such a fundamental right that even in juvenile proceedings, supposedly non-adversary, the youth has a constitutional right to counsel of his own:

> The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child "requires the guiding hand of counsel at every step in the proceedings against him."

In re Gault, *supra,* 387 U.S. at 36, 87 S.Ct. at 1448. [Citations omitted.]

Even though the right to counsel has been so considered, lower federal courts have consistently taken the position that there is no right to be represented by retained counsel at Selective Service hearings. Nickerson v. United States, 391 F.2d 760 (10th Cir.), cert. denied 392 U.S. 970, 88 S.Ct. 2061, 20 L.Ed.2d 1366 (1968); United States v. Dicks, 392 F. 2d 524 (4th Cir. 1968); United States v. Capson, 347 F.2d 959 (10th Cir. 1965); United States v. Tantash, 409 F.2d 227 (9th Cir. 1969); Haven v. United States, 403 F.2d 384 (9th Cir. 1968). In most of the cases in which the matter has been raised, the courts have either dismissed it with no discussion, placed their reliance on the fact that the personal appearance of the registrant before the board is not at a criminal proceeding within the ambit of the 6th Amendment, or held that failure to request counsel deprived the registrant of standing to raise the issue. (E.g., *Haven, supra.*)

2. It is interesting to note that following the *Greene* case President Eisenhower, in Executive Order 10,865, set up a security clearance procedure which included the opportunity to be represented by counsel. Exec.Order No. 10,865, 25 Fed.Reg. 1583 (1960), as amended in 3 C.F.R. § 512 (1968). The *Nugent* case was subsequently followed in Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L. Ed.2d 1569 (1960). Petitioner claimed denial of due process because he was denied, at trial, the right to have the Justice Department hearing officer's report, as well as the original report of the F. B. I. The Court rejected this claim, holding that neither was relevant at trial as the case "centered entirely on the Department's recommendation, which petitioner repudiated, but which both the appeal board and the courts below found supported by the record." 364 U.S. at 64, 80 S.Ct. at 1557. Although "following"

*Nugent,* the Court concluded that: "This is not to say that there might not be circumstances in a particular case where fairness in the proceeding would require production. *No such circumstances, as foundation for a claim of actual unfairness, are before us.*" 364 U.S. at 65, 80 S.Ct. at 1558. [Emphasis added.] Therefore, the holding in *Gonzales* is not persuasive in deciding the case at bar, because it was based wholly on the Court's conclusion that the facts demonstrated that Gonzales suffered no unfairness due to the denial of production of the documents. The reasoning of the *Greene* court, to the contrary, is much like the present case, because the possibility of unfairness to petitioner Greene—certainly no greater than to defendant Weller—led the Court to hold that the denial of traditional safeguards was not to be inferred, but rather required explicit authorization.

In still other cases the Court's language has merely been dictum. See *Tantash, supra; Haven, supra.* No case cited to the Court by the government or found by this Court has addressed itself to the apparent lack of specific authorization in the Selective Service Act for the denial of counsel before the local boards.

■ The often-abbreviated and sometimes-cryptic treatment of this traditional procedural safeguard has persisted in spite of the many significant procedural developments in other areas of the law. While conscientious objector status may be a "privilege" and not a "right" (See Uffelman v. United States, 230 F.2d 297 (9th Cir. 1956)), it is now established that the government may not distribute its largesse in a manner which ignores traditional procedural safeguards. Although the issuance of a liquor license would hardly be considered by most a "right", nevertheless an applicant for a liquor license has far more procedural rights than a Selective Service registrant whose life may ultimately be placed in jeopardy. See Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964). Likewise a welfare recipient has more procedural rights than a Selective Service registrant, see Kelly v. Wyman, 294 F.Supp. 893 (S.D.N.Y.1968) (three judge court), as does an applicant for admission to the bar. See Willner v. Committee on Character & Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963). In the area of juvenile proceedings the arguments that a juvenile has a right "not to liberty but to custody," that proceedings are "civil" rather than "criminal", and that the proceedings are non-adversary were advanced in order to justify elimination of the right to counsel. Although the constitutionality of the juvenile court laws had been upheld in over 40 jurisdictions, nevertheless the Supreme Court rejected these justifications. In re Gault, *supra.* When the reasoning of the Gault case was advanced in the selective service context, one court of appeals cited two pre-*Gault*

Court of Appeals cases and one 1911 Supreme Court case dealing with abridgment of freedom to contract to hold "it is well settled that there is no Constitutional right to counsel in administrative proceedings under the Selective Service Act." United States v. Dicks, *supra.* The court so decided despite the fact that the vague standards, burdensome volume, and restricted review in the Selective Service System cases lend themselves to precisely the same kind of abuse which Dean Pound in 1937 found should be surrounded by more formal procedural safeguards and the Supreme Court in 1967 held required the right to counsel. *Gault, supra,* 387 U.S. at 18–19, 87 S.Ct. 1428. See also Report of the National Advisory Commission on Selective Service.[3] It has even been held that in small claims proceedings which are clearly "civil" and may even be classified as "de minimus", the right to have counsel make a meaningful appearance somewhere in the proceedings cannot be withdrawn. Mendoza v. Small Claims Court, 49 Cal.2d 668, 321 P.2d 9 (1958); Prudential Ins. Co. v. Small Claims Court, 76 Cal.App.2d 379, 173 P.2d 38, 167 A.L.R. 820 (1946).

Cases such as In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957) (5–to–4 decision) and Madera v. Board of Educ., 386 F.2d 778 (2nd Cir. 1967), cert. denied, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968), do not compel a different result. In the *Groban* case it was held that a witness was not entitled to be assisted by retained counsel when giving testimony before a Fire Marshal. In *Madera* a parent and child were denied permission to be represented by counsel at a guidance conference involving their child pursuant to a Board of Education Regulation. If a person is not entitled to be represented by counsel before a Fire Marshal, before a Grand Jury or before guidance counselors, it is because these proceedings are preliminary in nature and in no way result in a final adjudication. *Madera,*

3. Government Printing Office (1967).

*supra*, 386 F.2d at 788; In re Groban, *supra*, 352 U.S. at 334, 77 S.Ct. 510. If a charge imperiling an individual's liberty were to arise from one of these hearings, a trial would ensue at which the government would have the burden of proof, and the defendant, with the aid of counsel, could attack the substance of any conclusions tentatively reached at the preliminary hearing which resulted in the charge. The *Madera* court's reliance on the failure of the court in Dixon v. Alabama State Bd. of Educ., 294 F.2d 150 (5th Cir. 1961) to add right to counsel to its outline of a fair proceeding prior to suspension of a student is misplaced, since the plaintiffs in their pleadings did not request the right to counsel. *Dixon, supra*, 294 F.2d at 151, n. 1. Furthermore, to the extent that the *Madera* case relies on Selective Service cases for authority it is for present purposes circular.

In contrast to the preliminary nature of the above proceedings, a registrant's personal appearance before his local board is in every sense an adjudication at which the registrant should be awarded traditional judicial safeguards. See Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). In 50 U.S.C.A. App. § 460(b) (3) Congress has substantially insulated the factual determinations of local and appeal boards. Review of such determinations in a hearing at which counsel is present is restricted to habeas corpus after, or criminal prosecution for refusal of, induction. The scope of review is limited to the question whether there was any "basis in fact" for the classification assigned. While judicial review is thus substantially restricted, the decision of the local board obviously has a dramatic impact on the registrant's life and liberty.

It is contended that since a conscientious objector hearing is an inquiry into the registrant's state of mind, the presence of counsel would not only be of no assistance but, because of the probability that he would make vexatious objections to questions and testimony, counsel's presence would be to the registrant's disadvantage. It is unrealistic to assume that an attorney who is familiar with the very limited scope of judicial review available would do anything which would antagonize a local board or leave it with an impression other than one of complete candor. Also, the registrant will be more able to present his case if he is articulately represented by counsel.

Counsel will also act as a deterrent to possible abrupt or summary treatment of the registrant's claim (*Cf.*, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). He may also bridge potential hostilities which result from the difference in ages between the board members (who are between 30 and 75 years old, 32 C.F.R. § 1604.52(c), (d)) and the registrant. Through questioning or argument, counsel can clear up any inconsistencies or vagaries in the registrant's testimony before the board which, if uncorrected, might lead the board to decide against an otherwise qualified registrant. Counsel would be very familiar with the requisite statutes, regulations, and interpretative cases. The registrant may never have previously been required to articulate his beliefs and he may omit or confuse critical aspects of his beliefs. The presence of counsel would be crucial to leaving the board with a complete portrayal of the registrant's relevant beliefs. Finally, a brief summary by counsel may focus the board's attention on the elements of a conscientious objector claim and relate them to what the registrant has said, pointing out why the registrant should be believed. For a review of some of the difficulties encountered in passing on conscientious objector claims, see United States v. Haughton, 413 F.2d 736 (9th Cir. 1969). All of the above roles are ones in which attorneys commonly operate, but with which a registrant is likely to have little familiarity. Of course, a registrant is always free to appear without counsel if he concludes that this would be to his advantage. Finally, a local board is not

without power to terminate a hearing which is being unduly extended by counsel.

It could be argued that 32 C.F.R. § 1604.41, providing that "Advisors to registrants may be appointed * * * to advise and assist registrants in the preparation of questionnaires and other selective service forms and to advise registrants on other matters relating to their liabilities under the selective service law" supplies such procedural safeguards as to remove from 32 C.F.R. § 1624.1(b) the taint of doubtful constitutionality.[3] This does not follow. Even assuming that the appeal agent would be legally qualified, 32 C.F.R. § 1604.71(c), there is no provision for his appearance before the board except when the board so mequests. 32 C.F.R. § 1604.71(d) (2).

Furthermore subsection (d) (5) injects such a conflict of interest[4] into any representation the appeal agent may provide that it is doubtful that he could act for the registrant in the role of an attorney.[5] He certainly cannot claim to represent the best interests of the registrant and still be in compliance with subsection (d) (5).

3. 32 C.F.R. § 1604.71 provides as follows regarding these advisors (appeal agents) :
    (c) Each government appeal agent and associate government appeal agent shall be, whenever possible, a person with legal training and experience.
    (d) It shall be the duty of the government appeal agent * * *
    (1) to appeal * * * from any classification of a registrant by the local board which is brought to his attention and, in his opinion, should be reviewed by the appeal board.
    (2) To attend such local board meetings as the local board may request him to attend.
    (3) To suggest to the local board a reopening of any case where the interests of justice, in his opinion, require such action and to submit to the local board, with such suggestion, the information obtained by his investigation of the case which has caused him to arrive at his decision that the case should be reconsidered. * * *
    (5) *To be equally diligent in protecting the interests of the Government and*

Accordingly, this Court is loathe to hold that the administrative denial of such a right is either authorized by Congress or is constitutional.

The motion to dismiss is granted.

*the rights of the registrant in all matters.* [Emphasis added.]

4. In an August 20, 1968 letter, written at the direction of the Board of Governors of the State Bar of California by Staff Attorney Mary G. Wailes, to all members of the Bar serving as Government Appeal Agents, it was stated: "The Board wishes you to be advised, however, that in its opinion in acting as an appeal agent you may be exercising dual responsibilities that could put you in a position of representing conflicting interests."

5. "To permit the inroad of a class of legal advisers being used as undisclosed informants for the Federal Government will confirm the suspicion and distrust with which some laymen approach full disclosure of their vital interests to their lawyers * * *. The ill-considered directive of General Hershey, already disavowed by government legal specialists, is clearly improper." Lawyers Cannot be Informants, 54 A.B.A.J. 153, 154 (1968).