**UNITED STATES of America**
**v.**
**Thomas Robert HOSMER.**
**Crim. No. 70–21.**

United States District Court,
D. Maine, S. D.
March 31, 1970.

Peter Mills, U. S. Atty., Edward G. Hudson, Asst. U. S. Atty., Portland, Me., for plaintiff.

Richard M. Howland, Boston, Mass., U. Charles Remmel, Portland, Me., for defendant.

## MEMORANDUM OF OPINION AND ORDER

GIGNOUX, District Judge.

Thomas Robert Hosmer was indicted for refusing to submit to induction into the armed forces of the United States in violation of 50 U.S.C. App. § 462(a) (1967). At his trial by the Court without a jury, he has raised a wide variety of procedural defenses, which the Court finds to be wholly without merit. The relevant record consists of defendant's Selective Service file as supplemented by testimony of the State Selective Service Director, the defendant, and two members of his Local Selective Service Board who were called as witnesses by defendant.

The essential facts are undisputed. Defendant registered with his Local Board in Kennebunk, Maine on August 29, 1961, shortly after his 18th birthday. In his Classification Questionnaire (SSS Form 100), filed January 2, 1964, he reported that he was a student at Husson College, Bangor, Maine, but made no claim for conscientious objector status. At that time the Board classified him II–S (Student deferment), but in November 1964, when defendant apparently had dropped out of college, he was reclassified I–A (Available for military service). When notified that defendant had entered a college in California, the Board again reclassified him II–S in April 1965.

In September 1965 defendant was back in Maine attending the Maine Maritime Academy. He requested and received continuation of his II–S status in September 1965, again in November 1966, and again in June 1967. In August 1968 defendant was "disenrolled" from the Maine Maritime Academy, and the Local

Board reclassified him I–A on August 13, 1968. On the following day he was notified of this classification and also of his right to a personal appearance before the Local Board and to appeal to the State Appeal Board within 30 days. Defendant did not, however, either request a personal appearance or appeal his classification, and on September 30 he was ordered to report for induction on October 23. A week later the Board received a letter from the Dean of the Hampshire Country School in Rindge, New Hampshire, advising that defendant had accepted employment as a teacher at that school, effective October 1. Upon the advice of the State Director, his induction was thereupon postponed until June 1, 1969.

On May 6, 1969 defendant was again ordered to report for induction on June 19. On May 9 defendant wrote the Board saying that he had had a recurrence of a past injury to his right knee and was consulting an orthopedist. This was followed by letters from two doctors advising that they had examined defendant and determined that he had a bad knee consequent to an injury which had apparently occurred six years previously. The Board responded by arranging for an examination of defendant by an orthopedic specialist in Portland. This doctor examined defendant on June 11 and found him physically qualified for service in the armed forces. The Board notified defendant of this finding on July 1.

Defendant "fled" to Canada for about two weeks in June and failed to appear at the induction center on June 19 as ordered. On June 30 defendant, having returned to this country, dropped into the Local Board office, stating simply that he had "evaded the draft." He was asked if he would prefer to be processed as a delinquent or to be given another chance to report for induction. He requested another induction date and on July 30 was again ordered to report for induction on August 27. On August 26, the day before his scheduled induction, defendant wrote the Surgeon General's office in Hampton, Virginia, complaining that he had been improperly examined by the Board's orthopedic specialist and stating that "if during my cursory physical examination upon induction, I do not feel my knee ailment has been thoroughly surveyed and evaluted [sic] by a physician, I shall refuse induction at this time." On the next day defendant reported for induction, was found qualified, but after all the proper warnings, refused to step forward.

In the meantime, defendant had moved to Cambridge, Massachusetts and was working there. On September 17 he was interviewed by a Special Agent of the Federal Bureau of Investigation and on October 14 was arrested on a United States Commissioner's complaint. By this time defendant had consulted a Portland and a Boston attorney, and on October 24 he wrote the Local Board stating, "I believe that I am a Conscientious Objector"; requesting the necessary conscientious objector forms and "all my rights of personal appearance, courtesy appearance, advice of counsel, advise [sic] of the government agent or any other rights I may have"; and asking that his attorneys be kept informed. On October 27 the Board mailed him SSS Form 150, the "Special Form for Conscientious Objector," and advised that it would grant him a "courtesy appearance" when the form was completed and returned. The Board also told defendant that he would have a procedural right of "personal appearance" only if his classification was reopened, and informed him of his right to consult a government advisor or appeal agent. Defendant returned the completed Form 150 on November 25. In his answers to the questions on the form he stated that although he practiced no religion at all, his beliefs in non-violence were "sincere and meaningful" so as to meet the test, as explained to him by his lawyer, laid down by the Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). His lawyer had, in fact, aided defendant in completing the form and so stated thereon. Several

letters were also received in defendant's support, including one each from his two lawyers, one from a friend with whom he had stayed in Canada, and one from his fiancé. The letter from his Canadian friend stated *inter alia* that defendant's beliefs were "not primarily religious in nature, since he sees his duty to refrain from all acts of war not so much in terms of obedience to Divine Command as in terms of a moral choice based upon a categorical imperative * * *." The fiancé also wrote that defendant's opposition to war was "philosophical in nature."

Defendant and his Portland attorney appeared for an interview before the Local Board on December 29. The attorney was not permitted to attend the interview. Defendant's summary of the interview indicates that the Board doubted his sincerity; thought that his lawyers had been putting thoughts into his head; felt that he wasn't religiously motivated;[1] and believed that in any event his feelings had crystallized long before he received his induction notice. By his own admission, defendant had told the Board that his views were not religious in origin or nature: "I concluded by stating that I could not give them any new evidence if they only based their CO's on religion because I was not filing for a religious CO, but only a philosophical CO."

On January 6 the Board wrote defendant as follows:

As a result of a courtesy appearance on December 29, 1969, and after having carefully examined all evidence in support of your claim of Conscientious Objector, the local board determined not to re-open your classification, inasmuch as there have been no circumstances beyond your control which arose since you were mailed an order to report for induction on September 30, 1968.

In response to a letter from defendant's Boston lawyer, the Board through its Executive Secretary set forth again its previously stated reasons for not reopening defendant's case and its legal inability to do so. Defendant made no attempt to appeal the Board's decision, and this prosecution followed.

Defendant raises by way of defense a number of asserted procedural defects which, he claims, constituted a denial of due process, invalidating the order of induction and the present prosecution. For the reasons which follow, the Court rejects all of his contentions.

■ Defendant's major argument is that upon receipt of his conscientious objector claim the Local Board was required to reopen his I–A classification and to consider the merits of his claim. The consequence of such a holding would be that the Board would have been required to cancel the induction order, 32 C.F.R. § 1625.14, and to reclassify defendant, 32 C.F.R. § 1625.11. Since defendant's conscientious objector request was not received until October 24, 1969, two months after his 26th birthday, any reopening of his classification would have meant effective immunity from induction, 32 C.F.R. § 1631.7(a). It is the settled law in this and other circuits, however, that a registrant has no right to have his Board consider a post-induction date conscientious objector claim. United States v. Stoppelman, 406 F.2d 127, 131–133 (1st Cir.), cert. denied, 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769 (1969); Palmer v. United States, 401 F.2d 226 (9th Cir. 1968). *See also* United States v. Stafford, 389 F.2d 215 (2d Cir. 1968); United States v. Gearey, 368 F.2d 144, 150 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); Davis v. United States, 374 F.2d 1 (5th Cir. 1967). *Cf.* United States v. Ruel, Crim. No. 68–43 (D.Me. Mar. 27, 1969) (Local Board need not consider post-indictment claim).

---

1. The two local Board members who testified at defendant's trial made it very clear that they were aware that membership in a formal religious sect was not necessary for conscientious objector status. Both insisted that in their opinion defendant's beliefs were not grounded in any religious considerations whatsoever.

■ Defendant's next contention is that even though the Board was not required to recognize his post-induction date claim, the Board had the *power* to do so, United States v. Stoppelman, *supra*, 406 F.2d at 132, n. 11; Palmer v. United States, *supra*, 401 F.2d at 228, n. 1; and that by granting him a "courtesy interview" on December 29, 1969 the Board must be "deemed" to have reopened his I–A classification. The identical contention was raised by the defendant and rejected by this Court in United States v. Blackwell, 310 F.Supp. 1152 (D.Me. Mar. 31, 1970). For the reasons there stated, the contention is rejected here.

■ Defendant strenuously urges that the Local Board had no "basis in fact" for its decision not to reopen his classification. *See* 50 U.S.C. App. § 460 (b) (3) (1967); Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States v. Delfin, 419 F.2d 226, 229 (2d Cir. 1969); United States v. Ransom, 223 F.2d 15, 17–18 (7th Cir. 1955); United States v. Burlich, 257 F.Supp. 906, 910–911 (S.D.N.Y. 1966); United States v. Blackwell, *supra*. While it is not necessary to reach this issue since the Court has held that defendant had no right to a reopening of his classification in any event; the Court will observe that there is overwhelming evidence in defendant's Selective Service file to support the Board's finding that there had been no change in circumstances beyond his control which would permit a reopening of his classification. First, defendant has consistently maintained, both in his Form 150 and in his personal interview, that his beliefs are based upon a personal philosophy and are not derived from any "religious training and belief." Thus, he failed even to meet the minimum requirements for a *prima facie* conscientious objector claim. 50 U.S.C. App. § 456(j) (1967); United States v. Seeger, 380 U.S. 163, 183–185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); United States v. Curry, 410 F.2d 1297, 1299 (1st Cir. 1969). Second, even if it be assumed that defendant's asserted beliefs made out a *prima facie* case for conscientious objector status, it is clear that this belated attempt to escape the clutches of the armed services was but another in a prolonged series of unsuccessful efforts by the defendant to obtain an exempt status. The record discloses: (1) defendant maintained a II–S classification until August 1968, when he was reclassified I–A shortly before his 25th birthday; (2) when defendant received his first induction notice in September 1968, he sought and obtained an occupational deferment by finding a teaching position; (3) when he was again ordered to report for induction in June 1969, defendant "fled" to Canada and simply failed to report on his June 19 induction date; (4) when he was again ordered to report for induction in August 1969, he sought a physical deferment because of a "trick knee" which he had apparently sprained six years earlier; (5) two months after refusing induction because of his alleged knee injury, and only after consultation with and prompting by a lawyer, defendant decided that he was, after all, a conscientious objector. As this Court has observed in United States v. Blackwell, *supra,* "the fortuitous timing of such a claim is a circumstance which may properly be considered by the Board." Indeed, the objective facts in this defendant's Selective Service file closely parallel those which caused the Supreme Court to observe in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955):

> It would not be mere suspicion or speculation for the Board to conclude, after denying Witmer's now abandoned claims [for agricultural and ministerial exemptions], that he was insincere in his claim of conscientious objection. 348 U.S. at 383, 75 S.Ct. at 396.

*See also* United States v. Stoppelman, *supra,* 406 F.2d at 131, n. 7; United States v. Martin, 416 F.2d 44, 48 (10th Cir. 1969); United States v. Blackwell, *supra.* Quite evidently, there were sufficient "objective facts before the * *

Board to * * * cast doubt on the sincerity of his claim." Witmer v. United States, *supra,* 348 U.S. at 382, 75 S.Ct. at 396.

Defendant's other defenses require only brief discussion. He argues that he was improperly denied the right to have counsel present at his "courtesy interview" on December 29, 1969. No regulation requires a Local Board to permit counsel to appear with a registrant at a courtesy interview. *See* Local Board Memorandum No. 41, November 30, 1951 (as amended July 30, 1968); *cf.* 32 C.F.R. § 1624.1(b). Moreover, the courts with virtual unanimity, have held that there is no Constitutional or statutory right to counsel in *any* Selective Service proceeding. United States v. Tantash, 409 F.2d 227, 228 (9th Cir.), cert. denied, 395 U.S. 968, 89 S.Ct. 2115, 23 L.Ed.2d 754 (1969); Haven v. United States, 403 F.2d 384, 385 (9th Cir.), cert. denied, 393 U.S. 1114, 89 S.Ct. 926, 22 L.Ed.2d 120 (1969); United States v. Dicks, 392 F.2d 524, 528 (4th Cir. 1968); Nickerson v. United States, 391 F.2d 760, 762 (10th Cir.), cert. denied, 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed.2d 1366 (1968); United States v. Capson, 347 F.2d 959, 962–963 (10th Cir. 1965); United States v. Mendoza, 295 F.Supp. 673, 683–684 (E.D.N.Y. 1969). *See* Hershey, Legal Aspects of Selective Service, 33 n. 95 (1969). *Contra,* United States v. Weller, 309 F.Supp. 50 (N.D.Cal. Sept. 19, 1969). Defendant asserts that the Selective Service System has an affirmative duty, and a continuing obligation, to inform a registrant of all possible claims *for* exemption and deferment to which he might be entitled. It is settled in this Circuit, as elsewhere, that the Selective Service System is under no affirmative obligation to provide a registrant with "free advice and assistance either in preparing questionnaires and forms for submission to his local draft board or with respect to other matters relating to his liabilities under the selective service law." Steele v. United States, 240 F.2d 142, 145 (1st Cir. 1956); Palmer v. United States, *supra,* 401 F.2d at 228; United States v. Ruel, *supra.* The only affirmative duty of a Selective Service official is not to mislead, and to give clear and correct information and advice when requested to do so. *See* Petersen v. Clark, 289 F.Supp. 949, 957–958 (N.D.Cal. 1968); Striker v. Resor, 283 F.Supp. 923, 926 (D.N.J. 1968); United States v. Bryan, 263 F.Supp. 895, 900 (N.D.Ga.1967); United States v. Howe, 144 F.Supp. 342, 344 (D.Mass. 1956). Defendant contends that he lacked the requisite criminal intent when he refused to submit to induction on August 27, 1969. There can be no question that defendant was fully aware of his obligation to comply with his induction order and acted knowingly and wilfully when he refused to step forward. No more than this is required. United States v. Rabb, 394 F.2d 230, 231–232 (3rd Cir. 1968); Graves v. United States, 252 F.2d 878, 881–882 (9th Cir. 1958); United States v. Hoffman, 137 F.2d 416, 419 (2d Cir. 1943); United States v. Prue, 240 F.Supp. 390 (D.Neb.1965).

The other defenses raised by defendant amount to "mere cavilling." Witmer v. United States, *supra,* 348 U.S. at 384, 75 S.Ct. 392. They do not merit discussion here.

The Court finds that on August 27, 1969 at Portland, Maine, the defendant wilfully and knowingly refused to comply with a valid order of his local Selective Service Board to submit to induction into the armed forces of the United States. Defendant's motion for judgment of acquittal is denied. The Court finds defendant guilty of the offense charged in the indictment.