UNITED STATES of America, Appellee,

v.

David Arthur GEAREY, Appellant.

No. 86, Docket 30551.

United States Court of Appeals Second Circuit.

Argued Sept. 29, 1966.

Decided Oct. 21, 1966.

Marvin M. Karpatkin, of Karpatkin, Ohrenstein & Karpatkin, New York City, for appellant.

Paul K. Rooney, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for S. D. New York; Richard A. Givens, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, FRIENDLY and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge:

The military conflict which now engages the nation has prompted much debate over our system of conscription. This controversy has been manifest not only in Congressional hearings, but also in numerous judicial proceedings in which the draft laws have been challenged. Probably no provisions have been examined more closely than those relating to the deferment of conscientious objectors.[1]

David Arthur Gearey was convicted of violating 50 U.S.C.App. § 462(a)[2] because of his refusal to submit to induction as ordered by his Local Selective Service Board. On this appeal, his principal contention is that although his claim of conscientious objection was not raised prior to receiving a Notice to Report for Induction (SSS Form No. 252), he was nevertheless entitled to the procedural safeguards provided for those claiming to be conscientious objectors in section 6(j) of the Universal Military Training and Service Act, 50 U.S.C.App. § 456(j).

In October 1960, upon attaining the age of 18, Gearey registered with his local draft board as required by law. He did not at that time request a draft exemption as a conscientious objector. Subsequently, he was granted a student deferment (2–S) because of his attendance at St. Francis College in Brooklyn. In November 1964, he was reclassified 1–A (available for military service) when his Local Board learned that he was no longer enrolled as a college student, except for a three credit part-time course at the New School for Social Research. Gearey was ordered to report for pre-induction physical examinations, and on January 4, 1965 he was notified of

---

1. See, e. g., United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), in which a unanimous Court held that the belief in a "Supreme Being" required of those claiming to be conscientious objectors, was the "sincere and meaningful belief which occupies in the life of the possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption." Id. at 176, 85 S.Ct. at 859. See also United States v. Jakobson, 325 F.2d 409 (2d Cir. 1963), affirmed sub nom., United States v. Seeger, supra.

2. "[A]ny person who * * * evades or refuses registration or service in the armed forces or any of the requirements of this title * * * or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in execution of this title * * * or rules, regulations, or directions made pursuant to this title * * * shall upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than 5 years or a fine of not more than $10,000, or by both such fine and imprisonment * * *"
Regulation § 1632.14 provides:
(a) When the local board mails to a registrant an Order to Report for Induction * * * it shall be the duty of the registrant to report for induction at the time and place fixed in such order. * * *
(b) Upon reporting for induction, it shall be the duty of the registrant * * * (5) to submit to induction * * *.

his acceptability for military service. The following day the Local Board voted not to reconsider Gearey's classification despite his claim that he planned to resume full-time studies in February. Notified of this decision, Gearey wrote to the Board in late January and requested a hearing to discuss his student status. This was granted, and on February 2, 1965 he appeared before the Board with evidence of attendance at a school for motion picture arts and a claim that he planned to re-register at St. Francis College. The Board reclassified Gearey 2–S and directed him to have St. Francis forward proof of his matriculation. The college, however, informed the Board in mid-February that Gearey was no longer a student, and when he failed to supply the Board with evidence of attendance, he was reclassified 1–A on April 6, 1965. An Order to Report for Induction was mailed on April 19, but four days later the Board received a letter from Gearey requesting that his classification be reviewed [3] and that his date of induction be postponed from May 5 until the end of his spring term at school. The Board deferred his induction and rescheduled it for July. On May 24, Gearey for the first time asked the Local Board to send the special questionnaire for conscientious objectors (SSS Form No. 150). After the questionnaire was returned, the Board invited Gearey to appear for an interview on July 6, and at the same time notified him that the date of his induction was scheduled for July 8. Upon the conclusion of the July 6 hearing, the Board informed Gearey that it believed he was not a "genuine c. o." and that the facts did not warrant a change in his classification.[4] Gearey reported for induction on July 8, 1965 but refused to take the symbolic step forward and was promptly arrested. At his trial before Judge Thomas F. Murphy, sitting without a jury, Gearey was adjudged guilty of failing to submit to induction into the armed forces, and was sentenced to imprisonment for two years.

Early in our nation's history, the government recognized the moral conflict which confronted the members of certain religious sects when they were called to bear arms. Originally, the states were principally in control of conscription, and soon established a pattern of exempting conscientious objectors.[5] When the federal government took control of conscrip-

---

3. Gearey stated he would submit proof of attendance at City College and the School of Motion Picture Arts.

4. The Local Board recorded the following summary of its July 6 hearing with Gearey:

 Registrant interviewed, had decided just recently to become a c. o., said he had been thinking about it but never mentioned it. We reviewed the c. o. # 150, also reviewed letter sent by Bishop Ford High School. Registrant claims he is not working there nor that he would definitely be working there in September. Said he would like to go to Europe and take pictures since this is the vocation he wants to pursue or maybe teach when he returns. The board after reviewing the evidence submitted and registrant's claims felt he did not qualify to be a genuine c. o. All facts considered did not warrant a change in classification. He was advised to report as scheduled. Vote was 4 to 0.

5. Among the original 13 Colonies, Massachusetts (1661), Rhode Island (1673), and Pennsylvania (1757) were the first to provide exemptions from combatant services for conscientious objectors. The Pennsylvania legislation, for example, provided that:

 All Quakers, Mennonites, Moravians, and others conscientiously scrupulous of bearing arms, who shall appear on any alarm with the militia, though without arms, and obey the commands of the officers in extinguishing fires, suppressing insurrection of Slaves or other evil-minded persons during an attack, in caring for wounded, conveying intelligence as expresses or messengers, carrying refreshments to such as are on duty, and in conveying to places of safety women and children, aged, infirm, and wounded persons, are free and exempt from the penalties of the act.

 Selective Service System Monograph No. 11, Conscientious Objection 30 (1950).

tion during the Civil War, this practice was continued.[6] Selective Service System Monograph No. 10, Conscientious Objection 39–41 (1950). During the First World War, the Draft Act of 1917, 40 Stat. 76, 78, required all eligible persons to serve in the armed forces, but permitted conscientious objectors to perform noncombatant duties. Id. at 54–55. A somewhat similar pattern was adopted by Congress in 1940 in the Selective Training and Service Act, 54 Stat. 889, and again in 1948 when the present draft law, the Universal Military Training and Service Act, was passed. Section 6(j) of the UMT&S Act, 50 U.S.C.App. § 456(j), provides that:

> Nothing contained in this title * * shall be construed to require that any person be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. * * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned and such person shall be notified of the time and place of such hearing. * * * If after such

hearing the Department of Justice finds that his objections are not sustained, it shall recommend to the appeal board that such objections be not sustained. The appeal board shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice together with the record on appeal from the local board.

 The obvious purpose of the statutory scheme which provides for intervention by the Justice Department into the Selective Service appeal procedure, is to furnish a fount of information concerning an appellant's conscientious objection claim to the Appeal Board, so that a careful and enlightened decision can be reached. The Department's recommendation is based not only on the hearing which it conducts, but also on the report it receives from the FBI concerning the accuracy and sincerity of the applicant's claim. The Justice Department's role in the appeal procedure serves another purpose. It introduces into the inquiry a government agency less intimately associated with the armed forces than the Selective Service System, and not as concerned with meeting fixed quota calls. As a result, a more objective and disinterested approach to granting exemptions can be expected. While it is true that the Department's recommendation is not binding on an Appeal Board, it is unquestionably a significant factor not only in the Board's final determination, but also in any decision that the President may ultimately reach if the case is referred to him.[7]

---

**6.** The treatment of conscientious objectors in the Confederacy was generally parallel to that in the North. One interesting proposal was made in North Carolina in the early days of the Civil War before the Confederate Government had assumed complete control of conscription. It was suggested that conscientious objectors work in the state's salt mines as an alternative to service in the armed forces. Ibid.

**7.** In addition to being notified of the time and place of the Justice Department hearing, the applicant is given the opportunity

to be heard, 32 C.F.R. § 1625.25(d); to receive a fair resume of the FBI report, Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955), and a copy of the Justice Department recommendation, Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955); 32 C.F.R. § 1625.25(e); and to file with the Appeal Board a written reply to the recommendation, 32 C.F.R. § 1625.25(e). In certain cases the decision of the Appeal Board may be reviewed by the President, 32 C.F.R. § 1627.1.

Gearey vigorously urges on this appeal that he was improperly denied the procedural safeguards in Section 6(j) for taking an appeal from the Local Board's determination that he was not a "genuine c. o." The denial by the Local Board was based upon its interpretation of 32 C.F.R. § 1625.2 [8] which provides:

The local board may reopen and reclassify anew the classification of the registrant * * * provided * * * *the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in registrant's status resulting from circumstances over which the registrant had no control.* 32 C.F.R. § 1625.2 (emphasis added).

The statutory authorization for this regulation is found in 50 U.S.C. App. § 460 which provides that the President may "prescribe the necessary rules and regulations to carry out the provisions of this title," and § 1625.2 in our view is clearly within the bounds of that grant of power. We can see no sound reason why a regulation may not require that claims for deferment should be advanced as soon as they have matured. If young men eligible for the draft are permitted endlessly to challenge their status and to claim review of adverse determinations, the effect on the Selective Service System would be chaotic for manpower quotas could rarely be met with any degree of certainty. This is especially true when the claim for deferment is based on a conscientious objection since a protracted process of Justice Department investigation and hearing is required. Years of experience have demonstrated that it is necessary and reasonable to set limits on the time in which a claim must be asserted in the litigation which floods our courts; so, too, it is essential and proper for an administrative agency, particularly one as large and complex as the Selective Service System, to require that claims be raised within reasonable time limits or be forfeited. We hold, therefore, as applied to applicants whose conscientious objections matured prior to receipt of an Order to Report for Induction, § 1625.2 is wholly justified as part of an orderly administrative process.[9] These objectors have not had "a change in * * * status resulting from circumstances over which * * * [they] had no control." They have had ample opportuntity to raise their claim of conscientious objection before an induction notice was sent, and they cannot justly complain that the Local Board refused to reopen their classifications.

The considerations are quite different, however, when a claim of conscientious objection, raised for the first time after receipt of an induction notice, is based on a claim which had not previously matured. Section 6(j) does not set any time limit by which an applicant's conscientious objections must fully crystallize in his mind. It would be improper to conclude that an individual is not a genuine conscientious objector merely because his beliefs did not ripen until after he received his notice,[10] although the be-

8. In 1942, 2 years after the Selective Service Training Act became law, the President promulgated § 626.2 of the Code of Federal Regulations, which was substantially similar to what is today § 1625.2. When Congress passed § 6(j) in 1948, the Report of the Senate Armed Services Committee stated only that "This section reenacts substantially the same provisions as were found in subsection 5(g) of the 1940 act." S.Rep. No. 1268, 80th Cong., 2d Sess. 14.

9. A similar conclusion has been reached by other Circuits. See United States v. Taylor, 351 F.2d 228 (6 Cir. 1965); United States v. Beaver, 309 F.2d 273 (4 Cir.), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); Boyd v. United States, 269 F.2d 607 (9 Cir. 1959); Keene v. United States, 266 F.2d 378 (10 Cir. 1959); United States v. Schoebel, 201 F.2d 31 (7 Cir. 1953).

10. The Defense Department has recognized that a genuine claim of conscientious ob-

latedness of a claim may be a factor in assessing its genuineness. See Clancy & Weiss, "The Conscientious Objector Exemption," 17 Maine L.Rev. 143, 147 (1965); Note, "Pre-Induction Availability of the Right to Claim Conscientious Objector Exemption," 72 Yale L.J. 1459, 1462 (1963). The realization that induction is pending, and that he may soon be asked to take another's life, may cause a young man finally to crystallize and articulate his once vague sentiments. The long history of exempting conscientious objectors, coupled with the specific *statutory* right of appeal, indicate to us a strong Congressional policy to afford meticulous procedural protections to applicants who claim to be conscientious objectors, and indeed to grant deferments in appropriate cases. Implementation of that policy requires that any individual who raises his conscientious objector claim promptly after it matures—even if this occurs after an induction notice is sent but before actual induction—be entitled to have his application considered by the Local Board.[11] In light of this, the Local Board must first determine when an applicant's beliefs matured. If the Board properly concludes that the claim existed before the notice was sent, the classification may not be reopened.[12] If the Board finds, however, that the applicant's beliefs ripened only after he received his notice, and that his beliefs qualify him for classification as a conscientious objector then a change in status would have occurred "resulting from circumstances over which the registrant had no control," and he would be entitled to be reclassified by the Local Board.[13]

While action by the Local Boards in accordance with this interpretation of the Regulation should avoid difficulty in the future, it remains to apply these principles to Gearey's case. The difficulty arises from the form of the Board's finding. If the Board had found that Gearey's beliefs after the induction notice were no different than before, that would have sufficed, provided the judge found

jection may arise even *after induction.* The various military services have therefore provided procedures for investigating such claims, and in appropriate cases for granting discharges. See Department of Defense Directive No. 1300.6, ASD(M) (Aug. 21, 1962); Army Regulation No. 635–20 (Nov. 9, 1962); Department of the Navy, Bupers Instruction 1616.6 (Nov. 15, 1962); Marine Corps Order 1306.16A (Oct. 16, 1962); Air Force Regulation No. 35–24 (March 8, 1963).

11. Any other conclusion would result in the anomalous situation that individuals whose claims of conscientious objection mature either prior to receipt of a notice of induction or after induction itself, would be permitted to apply for deferment, while those whose beliefs formed during the interim period, would not be able to properly raise their claims. It would appear this is so because Department of Defense Directive No. 1300.6 states:

Federal courts have held that a claim to exemption from military service under the UMT&S Act must be interposed prior to notice of induction and failure to make timely claim for exemption constitutes waiver of the right to claim. Therefore, request for discharge after entering military service, based solely on conscientious objection which existed but was not claimed prior to induction or enlistment, cannot be entertained. Similarly, requests for discharge based solely on conscientious objection claimed and denied by Selective Service prior to induction cannot be entertained.

12. This result is dictated not only by § 1625.2, but in most cases by § 1625.1(b) as well. "Each classified registrant and person who has filed a request for the registrant's deferment shall, within 10 days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification * * *." 32 C.F.R. § 1625.1(6). See Keene v. United States, supra, 266 F.2d at 384. In United States v. Corliss, 280 F.2d 808, 812, cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960), we inferentially approved the application of that section to conscientious objector claims.

13. See Keene v. United States, 266 F.2d 378, 384 (1959). But see United States v. Taylor, 351 F.2d 228 (6 Cir. 1965); Boyd v. United States, 269 F.2d 607 (9 Cir. 1959); United States v. Schoebel, 201 F.2d 31 (7 Cir. 1953).

a rational basis for it. Again, if the Board had said clearly that in its view Gearey never had been and was not now "a genuine c. o.," that too would have sufficed, subject to the same proviso, since there could not be "a change in the registrant's status resulting from circumstances over which the registrant had no control" if there had been no change at all. The Board's determination as to the sincerity of the claim, while ordinarily subject to an appeal with the safeguards of § 6(j), would not be in these circumstances because of the applicability of § 1625.2 to conscientious objector claims. While the Board's finding that Gearey was not "a genuine c. o." may have been a shorthand manner of expressing one or the other of the above views, it might also have meant that the Board was refusing to reopen on the ground that Gearey had not advanced his claim before the mailing of the induction notice, even though the claim had not matured until later.

■ We see no reason, however, why the Board's failure to speak with pristine clarity should require dismissal of this indictment. A remand should enable the judge to ascertain from the Local Board precisely what it meant. Compare United States v. Jakobson, supra, 325 F.2d at 417; United States v. Balogh, 157 F.2d 939, 944 (2 Cir. 1946), judgment vacated on other grounds, 329 U.S. 692, 67 S.Ct. 525, 91 L.Ed. 605 (1947). If it meant either that Gearey never was "a genuine c. o." or that whatever his beliefs were on the subject, they had matured before the induction notice was sent, and if the judge is convinced of the rationality of such a view, Gearey's conviction may stand;[14] otherwise the indictment must be dismissed.

■ Of the other grounds for reversal presented by appellant, only one merits discussion. Relying on United States v. Vincelli, 215 F.2d 210 (1954), Gearey argues that the law in this Circuit is that the Local Board reopens an applicant's classification—entitling him to a personal appearance and an appeal[15]—when it sends him a conscientious objector form. To understand why this is not the law, an earlier decision by this Court must be examined. In United States v. Packer, 2 Cir., 200 F.2d 540 (1952), appellant had requested a conscientious objector form after receiving his notice of induction. A letter from the Regional Director of the Selective Service to the Local Board suggested that Packer's classification had been reopened when the Board sent the form, and Packer was therefore allowed to proceed to the Appeal Board. This Court later reversed a conviction for failure to submit to induction, because at his hearing before the Department of Justice Packer had been denied the right to examine the FBI report. In arriving at its decision, the Court held that the letter from the Regional Director *and the appeal* that Packer was given, constituted a reopening which prevented the Government from contending that the applicant had waived his rights. The Supreme Court, however, reversed our decision on the ground that the refusal to allow Packer to see the FBI report did not amount to a violation of due process. United States v. Packer, reversed sub nom., United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953). The reopening question was not passed upon. Six years later, however, in United States v. Vincelli, supra, a panel of this Court citing our earlier holding in *Packer*, held that sending a form constituted a reopening.

---

14. The only objection to this course—that if Gearey had been clearly told of the Local Board's position, he might have submitted to induction—would be wholly inconsistent with the record of his insistence on pressing his claim at all costs.

15. If a classification is reopened, the Local Board must cancel any Order to Report for Induction, 32 C.F.R. § 1625.14, and must reclassify the registrant, 32 C.F.R. § 1625.11. The registrant is then entitled to a notice of his reclassification, 32 C.F.R. § 1625.12, and to an appearance before the Local Board and an appeal from its decision, 32 C.F.R. § 1625.-13.

On rehearing, though, 216 F.2d 681 (1954), two of the judges indicated that the Supreme Court's decision in *Nugent* had interpreted the law otherwise. We believe their view is the proper one, for had the Supreme Court decided that there had been a reopening, it would necessarily have affirmed our decision in *Packer* on the ground that appellant had been denied his basic statutory right to a personal appearance before the Local Board and to an appeal. By reversing, however, the Court inferentially indicated its view that sending a conscientious objector questionnaire is not, *ipso facto,* a reopening of the registrant's classification.

Vacated and remanded for further proceedings.