UNITED STATES of America,
Plaintiff,

v.

Claude David SCHMIDT, Defendant.

No. 4–70 Cr. 17.

United States District Court,
D. Minnesota,
Fourth Division.

June 3, 1970.

Robert G. Renner, U. S. Atty., by Peter J. Thompson, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Larry B. Leventhal, Minneapolis, Minn., for defendant.

## MEMORANDUM DECISION

MILES W. LORD, District Judge.

By an indictment filed on January 19, 1970, the federal grand jury charged the defendant with violation of 50 U.S.C. App. § 462; that is, that he did knowingly and wilfully refuse to report for and submit to induction in the Armed Forces of the United States as ordered by his Local Selective Service Board. The matter is presently before the Court on a motion by defendant to quash and dismiss the indictment.

A review of the defendant's Selective Service file reveals the following chronology of events leading up to the indictment. Defendant first registered with the Selective Service on August 5, 1966. After receiving two II–S classifications (student deferment), defendant was classified I–A (available for military service) on December 3, 1968, and notice of

said classification and advising him of his right of a personal appearance or an appeal was mailed to him on December 5, 1968. Defendant did not appeal from his I–A classification nor did he make any claim regarding a conscientious objector status. Thereafter, on April 11, 1969, Local Board No. 49 sent defendant his Order to Report for Induction (SSS Form 252), ordering him to report for induction on April 29, 1969. Defendant reported to the induction station on April 29, but twice refused to take the symbolic step forward signifying induction. He informed the officials at the induction station that he considered himself a conscientious objector. After explaining to him the possible consequences of his refusal to submit to induction, the officials allowed the defendant to leave.

On May 7, 1969, pursuant to defendant's request, he was provided with Form 150 (Special Form for Conscientious Objector). He completed this form and returned it to the Local Board on May 9, 1969. In his Form 150, defendant set out at some length the reasons why he should be considered a conscientious objector. He stated that his claim was based on religious training and belief which he acquired from his church and family. He therein acknowledges his belief in a Supreme Being by stating:

> The nature of my claim stems from being raised in the Presbyterian Church. I was taught a belief in God. In order to live my life correctly with this belief I must obey the will of God and act in accordance with his teachings. God has commanded me that I shall not kill. God says that I must love my enemies, not seek reprisals against him. Before I can consider anything else I must consider my relationship with God. Therefore, I believe that on this earth life is the most precious thing and only God has the right to decide who shall live and die. Because of my belief in God's teachings I am opposed to participation in any war of any form. To participate in war would be a direct violation of the teachings of God.

To support his claim, defendant additionally submitted a letter from his Minister and letters from several friends attesting to his beliefs and sincerity.

By letter dated May 22, 1969, from the office of the State Director, Selective Service System, it was recommended to the Local Board that the defendant be invited for a courtesy interview to discuss his claim as a conscientious objector. The letter advised the local board that they were to review the defendant's entire file, including his Form 150, to *"specifically determine if there has been a change in status resulting from circumstances over which the registrant had no control"*. (Emphasis original.)

Pursuant to this recommendation, the Local Board notified the defendant by letter dated May 26, 1969, that they wished to have him appear for an interview regarding his conscientious objector claim on June 3, 1969. Defendant met with the Board on that date and the action of the Board at the appearance is set forth in Item No. 23 of the file, which reads as follows:

> Registrant appeared before the board for a courtesy interview in regard to his claim as conscientious objector on June 3, 1969.
>
> Registrant was asked why he refused to submit to induction on April 29, 1969 as ordered. Registrant stated that he has a military tradition in his family and he had many pressures to go into the service. He said that for his father's sake he tried but once he was at the Induction Station he just couldn't go through with swearing in. He stated that he is a C.O. and he just had to put his family's feelings aside and do what he feels is right. He stated he would go to prison if that was the only way he could keep out of the service. He stated that he has talked many times to his pastor regarding his claims as C.O. but that the decision had to be made by himself. He stated that he

believed in God and that he could never take anyone's life as they are part of God.

The Board considered the information they received and asked the registrant to appear before the board at their next meeting.

A further notation was made regarding this meeting on the Cover sheet of the "Minutes of Local Board Meeting" for June 3, 1969, as follows:

* * * (R)egistrant appeared as requested at 9:30 P.M. for a conscientious objector interview. Registrant stated why he failed to submit for induction. He also stated his feeling and beliefs in regard to his claim as C.O. Board did not take action at this meeting pending further information and interview with registrant.

Following this interview, defendant submitted a letter to the Board briefly explaining his beliefs and that he felt entry into the armed services would be violating the teachings of God. He stated that he was willing to perform his duty in a civilian position that was acceptable to the Board. The Board received several other letters at this time from friends of the defendant attesting to his beliefs and sincerity.

By letter dated July 7, 1969, the Local Board informed the defendant that they wished to see him on July 15, 1969. As a result of this meeting, the Board made the following notation on the Cover Sheet of the "Minutes of Local Board Meeting" for July 15, 1969:

(Registrant) appeared before the board for a courtesy interview at 7:45 P.M. Registrant explained his feelings and beliefs of his Conscientious Objector claim. Board did not reopen Classification.

The Board advised the defendant by letter on July 17, 1969, that they had

determined that the facts in his file did not warrant reopening his classification. The Board also made an entry on the defendant's classification sheet that they had "considered all evidence and determined there was no change in circumstances beyond the registrant's control, classification not reopened."

Thereafter, by letter dated July 30, 1969, defendant was ordered to report for induction on August 19, 1969. Defendant wrote to the State Headquarters of the Selective Service System seeking their intervention. The State Headquarters replied by stating that they had reviewed his file and that they concurred in the determination of the Local Board. Defendant appeared at the induction center on August 19, 1969, but again refused to submit to induction. Subsequently, defendant's file was turned over to the United States Attorney and it was requested that he take the appropriate action. The indictment under attack in this Motion followed.

Defendant's motion raises various arguments claiming that the action taken by the Board was arbitrary and constituted a denial of procedural due process. The Court believes that only two of the arguments require discussion.[1]

Defendant's first argument is that under 32 C.F.R. § 1625.2, if a registrant makes a *prima facie* showing that he is entitled to reclassification the Board *must* reopen his classification. He claims that he made such a showing for a conscientious objector classification and thus the refusal of the Board to so reclassify him was without basis in fact, arbitrary, and contrary to law. Under the Selective Service Regulations, the effect of such a reopening is to cancel any Order to Report for Induction previously issued to him, 32 C.F.R. § 1625.14, and to afford him the same right of personal appearance and the same right of appeal as

---

1. Defendant also argues that the letter from the Local Board dated July 30, 1969, giving him notice of a new date to report for induction was invalid because it was not on Form 252 as required by 32 C.F.R. § 1632.1. The Court believes this argument is valid only if the Local Board reopened defendant's classification thereby cancelling the previously issued Form 252. 32 C.F.R. § 1625.14. See Davis v. United States, 410 F.2d 89 (8 Cir. 1969).

in the case of an original classification, 32 C.F.R. § 1625.13. Defendant contends that since the arbitrary action of the Board denied him these significant rights, he has been denied procedural due process.

The Regulation defendant relies on for this argument, 32 C.F.R. § 1625.2, provides as follows:

> The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds that there has been a change in the registrant's status resulting from circumstances over which the registrant has no control.

■■ The above Regulation is quite explicit in delineating the respective responsibilities of the Local Board and the registrant depending upon the time at which the registrant presents his request for reclassification. Under the first part of the Section, if the registrant requests reclassification prior to the date he has been ordered to report for induction, he has the burden of providing facts not considered by the Board in granting the original classification and which, if true, would justify a change in his classification. 32 C.F.R. §§ 1625.2 and 1625.11; see also United States v. Carroll, 398 F.2d 651 (3 Cir. 1968); United States v. Brown, 290 F.Supp. 542 (D.Del.1968). If the registrant meets this burden, and provides the Board with a *prima facie* showing that he is entitled to be reclassified, it is now well settled that the Local Board is required to reopen his classification.[2] See e. g., Davis v. United States, 410 F.2d 89 (8 Cir. 1969); Vaughn v. United States, 404 F.2d 586 (8 Cir. 1968); United States v. Freeman, 388 F.2d 246 (7 Cir. 1967).

■ Under the terms of the proviso, however, if the request for reclassification is subsequent to an order to report for induction, the registrant must bear the additional burden of first providing objective facts to show circumstances over which he had no control. See United States v. Rundle, 413 F.2d 329 (8 Cir. 1969); Davis v. United States, *supra;* Oshatz v. United States, 404 F.2d 9 (9 Cir. 1968); United States v. Hedges, 297 F.Supp. 946 (S.D.Iowa 1969). If the registrant meets this burden, as well as presenting new information which, if true, would justify a change in his classification, the Local Board is required to reopen his classification and determine whether the registrant is entitled to be so reclassified. See, e. g., Vaughn v. United States, *supra;* United States v. Bittinger, 422 F.2d 1032 (4 Cir. 1970); United States v. Gearey, 368 F.2d 144 (2 Cir. 1966), cert. denied 389 U.S. 959,

2. Upon reopening the classification, the Board must consider the new information it has received and classify the registrant in the same manner as if he had never before been classified, 32 C.F.R. § 1625.11, and the regulations provide for the right of personal appearance and the right of appeal from the reclassification, 32 C.F.R. § 1625.13. On the other hand, if the Board is of the opinion that the new information it has received does not warrant a reopening of the registrant's classification, it need only advise him of this by letter, 32 C.F.R. § 1625.4, and the regulations do not provide for the right of personal appearance or the right of appeal following this decision.

It is because the registrant is foreclosed from the right of personal appearance and the right of appeal upon a decision of the Board not to reopen his classification, that the courts have held that if the Board acted arbitrarily in so doing it has denied the registrant procedural due process. See United States v. Rundle, 413 F.2d 329 (8 Cir. 1969); Miller v. United States, 388 F.2d 973 (9 Cir. 1967); United States v. Freeman, 388 F.2d 246 (7 Cir. 1967); Olvera v. United States, 223 F.2d 880 (5 Cir. 1955).

88 S.Ct. 335, 19 L.Ed.2d 368 (1967); Paszel v. Laird, 308 F.Supp. 741 (E.D. N.Y.1969). Here, as under the pre-induction order claim for reclassification, the test is whether the registrant has presented a *prima facie* case. Ehlert v. United States, 422 F.2d 332, 334 (9 Cir. 1970), cert. granted 397 U.S. 1074, 90 S.Ct. 1525, 25 L.Ed.2d 808 (1970).

 Since this case involves a post-induction order assertion of a conscientious objector claim, it falls under the terms of the proviso. The threshold question the Court must decide, therefore, is whether the defendant made a *prima facie* showing that his new status resulted from circumstances over which he had no control. A registrant makes a *prima facie* case if he "has presented facts which, if true and uncontradicted by other information contained in his file, would be sufficient under the regulations to warrant granting his requested reclassification." United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966); Paszel v. Laird, *supra,* 308 F.Supp. at 743.

 Defendant contends he made such a showing. His contention is predicated on the so-called "crystallization theory", which is that if a registrant's conscientious objector beliefs mature after the date he is ordered to report for induction, this is a change in status resulting from circumstances over which he had no control. The cases holding to this effect, among others, are United States v. Sandbank, 403 F.2d 38 (2 Cir. 1968), cert. denied 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969); United States v. Gearey, *supra*; Keene v. United States, 266 F.2d 378 (10 Cir. 1959). The majority of Circuits have

held, however, that once the registrant receives his order to report for induction, he can no longer raise a conscientious objector claim under § 1625.2 since it does not arise from circumstances over which he had no control. See, among others, United States v. Schoebel, 201 F.2d 31 (7 Cir. 1953); United States v. Jennison, 402 F.2d 51 (6 Cir. 1968), cert. denied 394 U.S. 912, 89 S.Ct. 1024, 22 L.Ed.2d 225 (1969); United States v. Helm, 386 F.2d 434 (4 Cir. 1967), cert. denied 390 U.S. 958, 88 S.Ct. 1045, 19 L.Ed.2d 1153 (1968); Ehlert v. United States, 422 F.2d 332 (9 Cir. 1970), cert. granted 397 U.S. 1074, 90 S.Ct. 1525, 25 L.Ed.2d 808 (May 5, 1970). The Eighth Circuit has not specifically ruled on the crystallization theory,[3] and the district courts within the Eighth Circuit have ruled both ways.[4] It is clear, then, that there is by no means unanimity among the courts as to the legal effect of a claimed post-induction order maturation of conscientious objector beliefs; nor is it likely that any unanimity will be reached until the Supreme Court hands down its decision in the *Ehlert* case, *supra.*

The Court believes, however, that even if it should subscribe to the theory, it would be of no benefit to the defendant under the circumstances of this case. In those Circuits that have adopted the crystallization theory, the courts still require the registrant to bear the burden of proving that his beliefs did in fact mature after he received his order to report for induction. See, e. g., United States v. Stone, 422 F.2d 968 (10 Cir. 1970); United States v. Stoppelman, 406 F.2d 127 (1 Cir. 1969); United States v. Gearey, *supra,* 368 F.2d at 149; Keene v. United States, *supra.*[5]

3. There is language in several Eighth Circuit opinions, however, which seems favorable to the crystallization theory. See United States v. Abbott, 425 F.2d 910 (8 Cir. April 28, 1970); United States v. Rundle, 413 F.2d 329, 334 n. 3 (8 Cir. 1969); United States v. Pence, 410 F.2d 557 (8 Cir. 1969); Davis v. United States, *supra.*

4. Compare, United States v. Hinch, 292 F. Supp. 696 (W.D.Mo.1968) and United States v. Hansen, 314 F.Supp. 91 (D.C. Minn. Dec. 19, 1969) (Larson, J.), with United States v. Hedges, 297 F.Supp. 946 (S.D.Iowa 1969).

5. Compare with these cases, United States v. Kingen, 421 F.2d 158 (9 Cir. 1970); Dugdale v. United States, 389 F.2d 482

Consistent with this requirement, the Court is of the opinion that the defendant did not make a *prima facie* showing which would have required the Board to reopen his classification. At the very most, the evidence in the record with respect to the defendant's reasons for his post-induction order claim, if taken as true, present a factual issue. The Eighth Circuit has consistently followed the admonition of the Supreme Court in Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 395, 99 L.Ed. 428 (1955), that "it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations." United States v. Owen, 415 F.2d 383 (8 Cir. 1969); Vaughn v. United States, *supra,* 404 F.2d at 589–590; see Gabel v. Hershey, 308 F.Supp. 524, 526 (D.Va.1970). The courts are permitted to overturn the action of the Board regarding classification or processing of registrants only if it has no basis in fact. See, e. g., Witmer v. United States, *supra;* Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Vaughn v. United States, *supra,* 404 F.2d at 591. Robertson v. United States, 404 F.2d 1141 (5 Cir. 1968). On the basis of the information submitted to the Board, as well as the information obtained in the personal interviews, the Board concluded that the evidence before it did not warrant a reopening of the defendant's clas-sification. There is clearly a factual basis in the record for this decision.[6] Accordingly, the Board's refusal to reopen and reclassify was proper under 32 C.F.R. § 1625.2. It follows from this, of course, that the defendant was not denied procedural due process.

Defendant's second argument concerns the action taken by the Local Board following receipt of his claim. He argues that by granting him a courtesy interview and allowing him to set forth his beliefs with respect to his claim, the Local Board considered his claim on its merits. Having done so, it must be deemed that the Board did in fact reopen his classification. Since such a reopening would have cancelled his induction order and afforded him the right of administrative appeal from an adverse decision, he contends there is no valid induction order in existence. Accordingly, he cannot be indicted for failure to report for and submit to induction.

There is authority to the effect that if the Local Board grants a courtesy interview, or if in such interview the Board goes beyond determining whether the claimed change in status resulted from circumstances beyond the registrant's control to considering the actual merits of the claimed status, the Board has in fact reopened the registrant's classification. Murray v. Blatchford, 307 F.Supp. 1038 (D.R.I.1969); United States v. Westphal, 304 F.Supp. 951 (S.D. S.Dak.1969). For a recent decision from this District holding to this effect see,

---

(9 Cir. 1968); United States v. Hedges, *supra;* Magaro v. Commanding Officer, A.F.E.E.C., San Antonio, Tex., 308 F. Supp. 889 (W.D.Tex.1969).

6. The defendant stated in his Form 150 that he acquired his conscientious objector beliefs from attending the Presbyterian Church, from reading the Bible, and from some previous personal experiences which he felt demonstrated to him the sacredness of life. These indicate that his views were long standing. On the basis of this long standing opposition to participation in war in any form, the Court can give little credence to defendant's statement that it was not until he was at the induc-tion station that he first realized he may have to participate in war. It also appears that it was more for personal and family reasons that he did not claim a conscientious objector exemption prior to the date he was ordered to report for induction. This is not a *prime facie* showing that his beliefs matured after his induction order. *Compare,* for example, Dugdale v. United States, *supra,* and United States v. Hedges, *supra, with* Murray v. Blatchford, 307 F.Supp. 1038 (D. R.I.1969) and Paszel v. Laird, *supra.* See also Ehlert v. United States, *supra,* 422 F.2d at 335 (Duniway, J. concurring).

United States v. Kerwin, 313 F.Supp. 781 (D.C.Minn. April 27, 1970) (Larson, J.). See Miller v. United States, 388 F.2d 973 (9 Cir. 1967).[7]

In United States v. Westphal, *supra,* the Court stated that when the Local Board invited the registrant to appear before it regarding his post-induction order conscientious objector claim, it was in effect a reopening of his classification. The Court in Murray v. Blatchford, *supra,* believed the controlling factor was not whether the Board granted the discretionary interview, but rather what was covered in the interview. The Court stated that if the Board makes any inquiry *whatsoever* into the merits of the registrant's claim, then a reopening must be deemed to have occurred entitling the registrant to his personal appearance and administrative appellate rights. Murray v. Blatchford, *supra,* 307 F.Supp. at 1056 (Emphasis original).[8] The Court in United States v. Kerwin, *supra,* followed the rationale of *Blatchford* rather than that of *Westphal.*

This Court believes that in cases attacking the action of the Board under the terms of the proviso in § 1625.2, a distinction must be drawn between the Board having before it and possibly *considering* the merits of the claim on the one hand, and the Board actually *deciding* on the merits on the other. The former need not result in prejudice

to the registrant while the latter may well have such a result.

■ Such a distinction is in keeping with the function of the Court in a Selective Service case; namely, to determine whether the action taken by the Board with respect to classification of registrants has basis in fact. Estep v. United States, *supra.* Witmer v. United States, *supra.* This limited review is made from the facts of the case as reflected in the contents of the registrant's file. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); United States v. Owen, *supra.* If the stated decision of the Board is made in conformity with the regulations, and there is basis in fact in the record to support the decision, the Court is not free to overturn it on the basis of suspicion or speculation as to what other reasons may have motivated the Board in making it. Witmer v. United States, *supra.*

■ Under the terms of the proviso of § 1625.2, the threshold determination required of the Board is whether the registrant has presented objective facts constituting a prima facie showing that his newly claimed status resulted from circumstances over which he had no control. If the registrant claims conscientious objector status, it seems that the relevant facts the Board needs to make this determination are what the registrant's beliefs are, when and how he acquired them, and why he is

---

7. The facts in Miller v. United States, *supra,* relied on by the defendant here, are distinguishable from this case in one important respect. In *Miller* the Court held that the State Director of Selective Service had, under his authority in 32 C.F.R. § 1625.3(a), authorized the Local Board to consider the registrant's claim as if an induction order had not been issued and therefore waived the prohibition in the proviso of 32 C.F.R. § 1625.2. Accordingly, the Board was not restricted to first determining whether there was a change in the registrant's status resulting from circumstances over which he had no control. *Id.* 388 F.2d at 975. Thus, when the Board denied a reopening on the ground that the registrant was "seeking to avoid induction," *Id.* at 976, it was

clear that the Board had in fact decided on the merits and should have reopened the registrant's classification before making this decision.

8. This was really stated by way of *dictum* since such a conclusion was not essential to the Court's holding in the case. The Court held that Murray had made a *prima facie* case for conscientious objector classification and a *prima facie* showing that his beliefs matured after the date he received his order to report for induction. The only way the Board could have denied Murray's request for a reopening of his classification, then, was by deciding on the merits—which the Court found the Local Board had in fact done. Murray v. Blatchford, *supra* 307 F.Supp. at 1055–1057.

asserting them only after receiving his Order to Report for Induction. The Board should have the totality of circumstances—those affecting both the pre-induction and post-induction order status of the registrant—to determine whether the registrant's status did in fact change after he received his induction order due to changed circumstances. The courtesy interview granted by the Board following a request for reopening serves this purpose. It is in this sense that the Court believes that the Board will necessarily have before it and possibly consider the merits of the registrant's claim, since it would be difficult, if not impossible, for the Board to divorce the question of change in circumstances from the merits of the claim.

This Court believes, therefore, that the fact that the Board allows the registrant to set forth his beliefs in an interview, and may itself question the registrant regarding his beliefs, does not constitute a reopening of the registrant's classification. With one exception, regardless of the substantive merits of a conscientious objector claim, if the Board is foreclosed from so reclassifying the registrant under the terms of the proviso of § 1625.2, it has no alternative but to refuse to reopen.[9] See United States v. Stone, 422 F.2d 968 (10 Cir. 1970); United States v. Kingen, 421 F.2d 158 (9 Cir. 1970); Dugdale v. United States, 389 F.2d 482 (9 Cir. 1968); Oshatz v. United States, 404 F.2d 9 (9 Cir. 1968). If the Board decides that the registrant has not made the required showing of changed circumstances, up to that point the registrant has received all the procedural rights he is entitled to under the Regulations. See United States v. Gearey, *supra*. Thereafter, if the registrant refuses to submit to induction, his appeal from the Board's decision is made to the Court as a defense to any criminal charge brought against him. Estep v. United States, *supra*. When that is the

case, it is to the totality of circumstances as reflected in the registrant's file that the Court must look to determine if the Board's decision has basis in fact. If the Board has properly performed its function under § 1625.2, and its stated conclusion has basis in fact, the ruling of the Board must stand. Thus, in cases involving a post-induction order assertion of a conscientious objector claim, if the Board's stated conclusion that there was no change in circumstances beyond the registrant's control has basis in fact, the fact that the Board may have *considered* the merits of the claim seems harmless to this Court with respect to in any way prejudicing the rights of the registrant. See United States ex rel. Luster v. McBee, 422 F.2d 562 (7 Cir. 1970); United States v. Bowen, 423 F.2d 266 (9 Cir. 1969); Robertson v. United States, 404 F.2d 1141, 1147 (5 Cir. 1968); United States v. Gearey, *supra*, 368 F.2d at 151; *cf.* Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955).

On the other hand, if there is no factual basis in the record to support the Board's conclusion that there was no change in circumstances beyond the registrant's control, and the registrant did make a *prima facie* showing that he was entitled to be reclassified as a conscientious objector, it would be clear that the Board's refusal to reopen had to be on the merits of the claim. Under those circumstances, the Court would agree that if the Board is going to *decide* on the merits it must first reopen the classification to allow the registrant the opportunity to appeal from its decision. The Board is not free to go beyond its initial duty of determining whether to reopen the registrant's classification to determining the merits of his claim, but nevertheless foreclose administrative appellate review of its denial on the merits by simply couching it in terms of a refusal to reopen. This is the

---

9. That one exception is when the State Director of Selective Service, under the authority implied in 32 C.F.R. § 1625.3(a), requests the Local Board to reopen and consider anew the classification of a registrant. See Miller v. United States, *supra*.

rationale of Miller v. United States, 388 F.2d 973 (9 Cir. 1967) and Robertson v. United States, *supra,* and essentially the holdings in Murray v. Blatchford, *supra,* and United States v. Westphal, *supra.*

As applied to the case at bar, there is no question here that the Local Board had before it the substance of the defendant's conscientious objector claim. The defendant's beliefs with respect to his claim were set forth in his Form 150, and they were fully explained by him in the two personal interviews before the Board. There is nothing in the record to indicate, however, that the Board made its decision on the merits of the defendant's claim in that the Board members doubted his sincerity or for any other reason. There is no basis in the record to infer, therefore, that the Board, in refusing to reopen the defendant's classification, decided on any ground other than that he had not made a *prima facie* showing that his change in status resulted from circumstances over which he had no control. The Court has already found that this conclusion has ample factual support in the record. That finding is not changed by the fact that the Board had before it the merits of the defendant's claim and may well have pondered over the merits before reaching its conclusion. Such a finding is consistent with the principle that, absent any evidence in the record to the contrary, it is proper for the Court to presume regularity in the Board's proceedings. See United States v. Chaudron, 425 F.2d 605 (8 Cir. April 27, 1970); Greer v. United States, 378 F.2d 931 (5 Cir. 1967).

Therefore, the Court holds that the Board, by granting the defendant the two courtesy interviews and by allowing the defendant to set forth the substance of his claim at such interviews, did not thereby reopen his classification. See, e. g., United States ex rel. Luster v. McBee, *supra,* 422 F.2d at 568; United States v. Mulloy, 412 F.2d 421, 423 (6 Cir. 1969); United States v. Banks, 413 F.2d 435 (5 Cir. 1969); Chaney v.

United States, 406 F.2d 809 (5 Cir. 1969); Parrott v. United States, 370 F.2d 388 (9 Cir. 1966); Gabel v. Hershey, 308 F.Supp. 524 (D.Va.1970); Magaro v. Commanding Officer, A.F.E.E.C., San Antonio, Tex., 308 F.Supp. 889 (W.D. Tex.1969). To the contrary, the Court believes that in fairness to the registrant the Board should continue to grant such interviews and allow the registrant the opportunity to amplify and explain what he has stated in his Form 150. Even if the first question before the Board is whether the changed status resulted from circumstances over which the registrant had no control, the registrant has a better opportunity of convincing the Board of this fact in a face-to-face interview than from the cold pages of his Form 150.

Based on the above findings of fact and conclusions of law the Court finds that the Order to Report for Induction issued by the Local Board to the defendant on April 11, 1969, was not cancelled and remains a valid order issued by the Selective Service Board, and that the defendant was and is under a continuing duty to report for and submit to induction as ordered therein. Accordingly,

It is ordered

That the defendant's motion to quash and dismiss the indictment is denied.