James Harold GORDON, Plaintiff,

v.

Stanley R. RESOR, Individually and as Secretary of the Army, Commanding Officer, Individually and as Commanding Officer of the United States Army Reserve Components Personnel Center, Fort Benjamin Harrison, Indiana, and Commanding Officer, Individually and as Commanding Officer of Walter Reed Army Medical Center, Washington, D. C., Defendants.

No. 70 Civ. 2796.

United States District Court, S. D. New York.

Sept. 3, 1970.

Rabinowitz, Boudin & Standard, New York City, for plaintiff, by Michael B. Standard, Leonard B. Boudin and Joan Goldberg, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., for defendants, by Daniel Riesel, Asst. U. S. Atty., of counsel.

MEMORANDUM

CROAKE, District Judge.

Plaintiff is a medical doctor specializing in the field of anaerobic bacteria. Upon graduating from Harvard Medical School in June 1969, plaintiff applied for a commission in the United States Army Reserve, and in October 1966 he was commissioned a First Lieutenant pursuant to the "Berry Program," and thereafter, for the succeeding three and one-half years, renewed his contract with the Army on an annual basis. Under the Berry Program, a doctor is granted a deferment so he may complete a residency and subsequently enter the Service as a specialist.

As so often happens, alas, with such things, there came a time when plaintiff's residency was over and his deferment at an end. By order dated April 24, 1970, he was instructed to report for active duty in the Army Reserves to the Walter Reed Research Center, Washington, D. C., on July 3, 1970. However, on June 22, 1970, eleven days before his said activation date, plaintiff filed a conscientious objector application form,

DA Form 2496, requesting discharge from the Army. He directed this application to his then Commanding Officer at the United States Army Reserve Components Personnel Center, Fort Benjamin Harrison, Indiana. Plaintiff indicated in said application and in his papers herein that although his beliefs assertedly qualifying him for conscientious objector status developed around December 1969 nonetheless he did not believe that he qualified as a conscientious objector until he read the decision of the United States Supreme Court in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (June 15, 1970), and accordingly did not make his application until after reading that case. Mr. Gordon indicated in his conscientious objector application form that he is willing to perform work under the Selective Service civilian work program for conscientious objectors and that he consents to the issuance of an order for such work by his local Selective Service Board.

The Army, in a letter dated June 26, 1970, made the following response to plaintiff's application of June 22, 1970, for discharge as a conscientious objector:

"2. Your application for discharge based on conscientious objection has been forwarded to the Commanding Officer, Walter Reed Army Institute of Research, Washington, D.C. That command will process your application in accordance with AR 635–20 upon your arrival.

"3. Department of Army Policy provides that applications received after the normal suspense time required to process them will be forwarded for processing under the provisions of AR 635–20 upon arrival at your initial duty station. No provisions exist whereby active duty orders may be revoked due to late submission of a request for classification as a conscientious objector."

Thus, the Army's position was that due to the lateness of plaintiff's application for conscientious objector status, it would not consider him under the procedures set up by the army regulations for reservists not on active duty, see AR 135–25, but rather would require that he submit to activation and have his application considered under the procedures set up by the army regulations for activated army personnel, see AR 635–20.* The Army based this decision upon an asserted Department of the Army Policy and on its interpretation of the provisions of AR 135–25. Plaintiff's request for postponement of his activation date pending a decision on his application was denied.

Plaintiff initiated the instant action on June 30, 1970, seeking to have defendants enjoined from ordering him to active duty and ordering them to process his application for discharge. Presented to the undersigned herein is plaintiff's motion, brought on by order to show cause dated July 2, 1970, for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, cancelling plaintiff's order to report to Walter Reed Medical Research Center on July 3, 1970, and restraining the defendants from ordering plaintiff to active duty pending the determination of this action. The order to show cause was signed by Judge Lasker of this Court and plaintiff was granted a stay of the order to active duty pending the hearing of this motion. The motion was heard before the undersigned and decision was reserved. Plaintiff's stay was extended pending the determination of the motion.

This case presents the question on the merits of whether plaintiff under the facts outlined above and as they develop at the trial has a right under the rele-

---

* Copies of AR 135–25, relating to applications for conscientious objector status of reservists not on active duty, and AR 635–20, relating to applications for conscientious objector status of activated army personnel, and of the Department of Defense Directive upon which both army regulations are based, DOD 1300.6, May 10, 1968, are attached hereto.

vant Department of Defense Directives and army regulations to a hearing on his conscientious objector hearing *before* his entry onto active duty under the procedures set up thereby for reservists not on active duty; or whether, on the other hand, he must first report to his said active duty post, become activated, and then have his conscientious objector claim considered under the procedures provided by the relevant Department of Defense Directives and the army regulations for those on active duty. Presented to the undersigned herein, of course, is not the case on the merits, but rather plaintiff's motion for a preliminary injunction. Thus we must decide whether plaintiff has met his burden of establishing that he has a substantial likelihood of success on the merits of his action and that he will suffer irreparable injury if the preliminary injunction is not granted, and, further, that the overall balance of the equities is with him.

■ We are most reluctant to interfere in the workings of the military, especially in matters of internal administration of military affairs. However, it is clear that the law imposes upon us the duty to determine, when the matter is properly raised before us, whether the army has followed its own regulations, as, of course, it must. Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); United States ex rel. Mankiewicz v. Ray, 399 F. 2d 900 (2d Cir. 1968); *see also* Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L. Ed.2d 1403 (1957); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). We are also aware that the Congressional policy of honoring conscientious objection of prospective draftees is a long-standing one. *See* United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965). It finds its counterpart in the more recent policy of the armed forces that conscientious objectors should be discharged from service or assigned noncombatant duty. The armed forces naturally focus their atten-

tion on conscientious objection crystallizing after induction, leaving cases of earlier crystallization to the jurisdiction of the Selective Service System. Ehlert v. United States, 422 F.2d 332 (9th Cir. 1970); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); United States v. Gearey, 368 F.2d 144, 149–150 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); DOD 1300.6, *supra.*

■ As to the question of whether he would sustain irreparable injury if he were not granted a preliminary injunction, plaintiff argues that it would violate his conscience to be forced to submit to active duty and participate in the active army and that this will be the result unless his order to report is further stayed and he is granted a hearing on his application. Mr. Gordon states in his application:

"As a physician, I have always been assured of a non-combatant role in the Armed Forces. Furthermore, my assignment to Walter Reed Army Institute of Research guarantees that I should not have to treat Army personnel with the aim of making them better able to participate in combat. In spite of these considerations, I find myself unable to enter on active duty and remain true to my religious beliefs. By entering on active duty I am giving my support to an organization whose function is in opposition to my fundamental religious beliefs. By giving this consent to killing as a means of implementing policy, I should be untrue to myself and guilty of avoiding the responsibility that derives from my religious conviction. This I cannot do." Plaintiff's DA Form 2496 at 14.

The determination of the likelihood of irreparable harm is often a most difficult one to make. In some cases denial of a preliminary injunction is tantamount to the denial of the substantive relief sought because by the time of the trial, regardless of the result thereof, the damage will have been done. This is

such a case. After considering the facts as hereinabove outlined and the policy of the military, as expressed in DOD 1300.-6 and AR 135–25, *supra,* to respect the sincere beliefs of non-activated reservist conscientious objectors, we have concluded that plaintiff herein would sustain irreparable injury if the preliminary injunction were not granted.

Next we come to the question of whether plaintiff has sustained the burden of establishing the substantial likelihood of his success on the merits. In support of his motion, plaintiff argues that neither AR 135–25 nor DOD 1300.6, *supra,* imposes a time limit as to how long in advance of his activation date a reservist must submit his application for a discharge based on conscientious objector status for it to be acceptable. He argues that he made his application as soon as he became convinced he qualified for conscientious objector status. In opposition, the army acknowledges that it has revised its prior policy that only conscientious objector applications filed more than 90 days prior to a reservist's active duty date will be processed, such that now all such applications except those filed "on the eve" of the active duty date are processed, even when this requires amendment of the reservist's orders. Applications filed on the eve of the reservist's active duty date will be forwarded to his active duty Commander for processing. The Army argues that this current policy is in conformity with its interpretation of the applicable regulation, AR 135–25, in that said regulation provides in part that "Commanders" having custody of the member's records will take" actions to process and evaluate applications for conscientious objector status. AR 135–25, par. 7a. The army indicates that when plaintiff's application of June 22, 1970, reached his Reserve Commander, that Commander no longer had custody of plaintiff's records, since they had been sent forward to Walter Reed Research Center on June 22, 1970. The difficulty with this interpretation of the words of the regulation is that it is in conflict with other provisions thereof to the effect that:

"2. Applicability. a. This regulation applies to *all* Reserve members of the Army, except those specified in b below

b. The provisions of AR 600–200, AR 614–100, and AR 635–20 govern the disposition of Reserve members of the Army who . claim to be conscientious objectors and who are either—

(1) Serving in the active military service in their Reserve status; or

(2) Serving on initial active duty for training in their status as Reserves of the Army.

"3. Explanation of terms. For the purpose of this regulation, the following terms will apply:

a. *Reserve members of the Army.* Commissioned officers, warrant officers, and enlisted members of the Army National Guard of the United States and of the Army Reserve." (Emphasis added.)

Thus, the regulation does not say it applies to all reservists except those on the eve of their active duty. The provisions of AR 135–25 are in implementation of DOD Directive 1300.6, which also has no such limitation. Also, the army asserts that plaintiff's relief lies under AR 635–20 after he is activated. It is recognized by the army that plaintiff has no relief under that section until such time as he is activated. Are we to conclude then that there is a hiatus during which time neither AR 135–25 nor AR 635–20 applies, despite the clear policy of DOD 1300.6? The answer must be no. The incongruity of such hiatuses was pointed out by Judge Kaufman writing for the Court of Appeals in United States v. Gearey, *supra.* The government further argues that AR 135–25, par. 8, unlike AR 635–20, par. 6(a) does not provide for retention of a serviceman in his unit while his applica-

tion is being processed. However, this does not seem so clear from the actual words of the regulations. AR 135–25 provides in pertinent part as follows:

"8. *Assignment.* An individual who applies for discharge based on conscientious objection will be assigned duties providing the minimum conflict with his professed beliefs and will be required to maintain the same standards of performance and behavior as other personnel assigned to his unit pending a final decision on his application. * * *"

AR 635–20 provides in pertinent part as follows:

"6. *Assignment.* a. An individual who applies for discharge based on conscientious objection will be retained in his unit and assigned duties providing the minimum practicable conflict with his asserted beliefs pending a final decision on his application. * * *"

Although the phraseology is somewhat different, the words "as other personnel assigned to his unit" of AR 135–25 would appear to imply substantially the same meaning as the words "will be retained in his unit" of AR 635.20. Such a distinction as the government urges, even if in fact intended, is clearly not expressed in the words chosen such as to give notice thereof. It might well be argued, however, that for a reservist to be able to apply for discharge on the grounds of conscientious objection on the eve of his active duty date, his beliefs assertedly so qualifying him must have crystallized at such a late date. Clearly, a reservist could not sit on his beliefs so crystallized, until the latest possible moment and then assert them. The rule in the analogous situation of an application by a Selective Service registrant for conscientious objector status after receipt of an induction notice but before induction is that the application will be considered only if the asserted beliefs crystallized after the re-

ceipt of the notice. United States v. Gearey, *supra.* On the uncontradicted facts asserted by plaintiff herein, as to the time of the crystallization of his beliefs, it would appear that he has a substantial likelihood of establishing at the trial of the merits that he in fact made his application immediately upon crystallization of said beliefs.

A somewhat similar case was Smith v. Resor, *supra,* where plaintiff was a reservist who had been ordered to active duty as a punitive measure because of his alleged unsatisfactory performance at drills. His commanding officer had improperly and incorrectly informed him that there was no appeal from the call-up order. The District Court dismissed plaintiff's petition for a writ of habeas corpus on the ground of lack of jurisdiction. On appeal, the Court of Appeals remanded, indicating as follows:

"In the circumstances present here, we conclude that the most effective relief for Smith, concomitant with the least disruption to the military will be accomplished by remanding this action to the District Court with the suggestion that it treat the action as a mandamus proceeding (pursuant to the mandamus jurisdiction given it by 28 U.S.C. § 1361).

\* \* \* \* \* \*

"The district court will then direct the Army to permit Smith fully to avail himself of the procedures the Army has established for review of Captain Vandenburg's decision (unless, of course, the Army decides to withdraw the call-up order). *The stay of his call-up order, already in effect, is to be continued until the course of action set forth above is completed.* 406 F.2d at 147–148." (Emphasis added.)

In United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969), plaintiff was an Army reservist who had ap-

plied for and been denied an exemption from active duty pursuant to Army Regulations because of extreme personal and community hardship. He was initially granted a stay by the Court of Appeals pending appellate review of the denial of his petition for a writ of habeas corpus. In Hammond v. Lenfest, *supra*, a naval reservist applied for and was denied a discharge as a conscientious objector. He thereafter refused to attend drills pursuant to his reserve obligation and was thereupon ordered to report for two years active duty. District Judge Zampano issued a show cause order that directed, *inter alia*, that plaintiff "remain in and not be removed from this district until further order of this court." With the consent of the parties, this provision remained in effect during the pendency of plaintiff's petition for a writ of habeas corpus and his appeal of the denial thereof. The Court of Appeals ultimately remanded, directing that the District Court return the matter to the Naval authorities for proper disposition in accordance with Navy regulations.

From a policy standpoint, the issues presented herein are difficult ones. On the one hand, the interest of the Army in having reservists report for active duty when directed to do so, or, at least give advance notice if they for any reason are not going to report, is great. On the other hand, and perhaps more importantly, the law and indeed the Army itself clearly respect the sincere beliefs of conscientious objectors.

On balance, in light of the foregoing and after much consideration and research, we have concluded that plaintiff has met the burden of establishing the substantial likelihood of success on the merits of his claim and the great danger of irreparable injury if a preliminary injunction is not granted. Accordingly, the preliminary injunction is granted, continuing the stay of plaintiff's activation until such time as a decision is made on the merits of plaintiff's claims in this action.

Submit order.