**UNITED STATES of America,**
**Appellee,**

v.

**Howard R. DELFIN, Appellant.**

**No. 112, Docket 33083.**

United States Court of Appeals
Second Circuit.

Argued Sept. 18, 1969.

Decided Oct. 10, 1969.

Jerome C. Ditore, Asst. U. S. Atty., New York City (Vincent T. McCarthy, U. S. Atty., on the brief), for appellee.

Steven J. Hyman, New York City (Alan H. Levine, New York City, on the brief), for appellant.

Before LUMBARD, Chief Judge, WATERMAN and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge:

We are once again confronted with the question of what degree of consideration must be given a claim of conscientious objector status presented after receipt of an order to report for induction.

Upon discovering that Delfin was no longer attending college, his Local Board (No. 65) reclassified him I-A (acceptable for induction) on October 5, 1966. Delfin did not seek a personal appearance or appeal from this classification. Rather, at a pre-induction physical examination on November 21, 1966 he presented evidence of an aggravated back condition which he felt might exempt him from military service. Following this examination, the armed forces medical examiners filed a Statement of Acceptability with Delfin's Board, which concluded "Induction is being held in abeyance. Not presently acceptable for induction."

A week after his physical examination, on November 30, 1966, Delfin wrote to his Board stating that he wished to apply for conscientious objector status and requesting a form on which to make his application. In compliance with this request the Board mailed him a copy of SSS Form 150 (Special Form for Conscientious Objectors) on December 6. Delfin failed to complete and return this form by December 19, despite the requirement, clearly stated on its first page, that the "form must be returned on or before" that date.

For the next six months there were no communications among Delfin, his Board, and the armed forces medical examiners. Finally on June 1, 1967, the medical examiners mailed to the Board a new Statement of Acceptability which indicated that, although Delfin's acceptability had been undetermined since November 21, 1966, he had now been found fully acceptable for induction. On June 6, the Board sent Delfin a copy of this Statement of Acceptability and a current information questionnaire (SSS Form 127). Although Delfin had thus received notice of his physical acceptability for military service at the time he filled out the questionnaire, the completed questionnaire, received by the Board on June 27, made no mention of any claim for conscientious objector status or of any other ground for deferment.

Accordingly, on July 7, 1967, the Board gave Delfin notice to report for induction on July 24. Delfin failed to report. Instead, on July 24 he presented himself at the office of his Board and proffered a completed application for conscientious objector status together with a letter setting forth the reasons why his convictions would not permit him to submit to induction. At its August 23 meeting and without affording Delfin a hearing, the Board determined that since Delfin's convictions had matured prior to the issuance of the induction order, his classification need not be re-

opened.[1] Two days later Delfin was notified of this decision and ordered to report to the Board by September 6 for purposes of setting a new induction date. Once again, Delfin failed to report. His only response to the Board's order was to request a personal appearance, a right which had been foreclosed by the vote not to reopen his classification. Therefore, on September 6, the Board began to process Delfin as a delinquent. He was indicted on March 7, 1968, convicted on October 4, 1968, and sentenced for an indefinite term under the Youth Corrections Act.[2]

■ The most significant issue raised by the appellant on this appeal is his challenge to the Board's failure to reopen his classification and to consider his claim to conscientious objector status on the merits, notwithstanding the fact that it was first presented after receipt of an induction order. Applications for classification as a conscientious objector present subtle questions difficult to resolve except upon the fullest consideration, and as Congress has recognized, fairness to the applicant requires that they not be disposed of in a summary manner.[3] On the other hand, to allow Selective Service registrants to delay presentation of ripe claims for deferments until they have received induction orders would seriously disrupt the orderly administration of the Selective Service System. There exists, therefore, considerable justification for the Selective Service regulation which provides for limited consideration of claims for deferments presented after issuance of an order for induction.

" * * * [T]he classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2.

In Gearey v. United States, 368 F.2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967), we struck a balance between the registrant's interest in receiving full consideration for his claim to conscientious objector status and the Government's interest in ensuring that all claims for deferments, including applications for classification as a conscientious objector, are promptly presented. *Gearey* instructed that when an application for conscientious objector status was first presented after issuance of an order for induction, a Board could refuse to reopen the applicant's classification under 32 C.F.R. § 1625.2 only if it found that his convictions had matured prior to his receipt of the induction order. 368 F.2d at 149–150. We reasoned that if an applicant's conscientious objections had not crystallized prior to that date, he could not be said to have tarried over his claim and should be entitled to have his classification reopened.

■ In this case, Delfin's Board made the specific determination required by our decision in *Gearey*: "This L.B. determines that registrant's beliefs matured some time prior to induction order." The Board's finding contained

1. The Board based its refusal to reopen Delfin's classification on 32 C.F.R. § 1625.2, discussed and quoted *infra.*

2. Ordinarily, the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026 (1964), applies only to offenders under the age of twenty-two years at the time of conviction. 18 U.S.C. § 5006. When convicted, Delfin's age was twenty-five. But 18 U.S.C. § 4209 (1964) provides if the court finds that an offender under the age of twenty-six "will benefit from

the treatment provided under the Federal Youth Corrections Act * * * sentence may be imposed pursuant to the provisions of such act."

3. Under § 6(j) of the Universal Military Training and Service Act, 50 U.S.C. App. § 456(j), an appeal from a local board's *denial of a claim for conscientious objector status is to be referred to the Department of Justice for the purpose of holding an additional hearing.

none of the ambiguities which have required us to remand other cases for further consideration. See, e. g., United States v. Stafford, 389 F.2d 215 (2d Cir. 1968). Therefore, the only question before us is whether the Board's finding that Delfin's conscientious objector convictions matured prior to his receipt of the induction order is supported by any "basis in fact." See Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Scrutiny of Delfin's Selective Service record reveals several factors which, considered together, could properly have provided a rational basis for the Board's determination. Delfin stated that he wished to apply for classification as a conscientious objector on November 30, 1966, seven months before he received his induction order. His application for conscientious objector status contained a statement that he had begun to become involved with the Quakers as early as April 1967. In this same application, he claimed that he had given public expression to the convictions which in his belief entitled him to be considered a conscientious objector by marching and leafletting against the Vietnam war in April and May 1967. It seems somewhat incongruous for Delfin to have expressed in April convictions which he now alleges he did not possess until July. We therefore conclude that the Board did have a rational basis for deciding that Delfin's beliefs had matured prior to his receipt of the induction order and, consequently, that its decision not to reopen his classification was justified.

■ The other contentions urged upon us by Delfin have no merit. Delfin urges that since no new induction date was set after he presented his claim for classification as a conscientious objector, he cannot be convicted for refusing to report for induction. Although, technically, no new induction date was set, Delfin was ordered to appear before the Board no later than September 6, 1967 for the purpose of setting a new date for induction. His failure to report for this purpose frustrated the induction process equally as much as a failure to report for actual induction would have done, and therefore fully justifies his conviction. See also United States v. Prince, 398 F.2d 686, 688 (2d Cir. 1968) (order to report for induction creates a continuing duty to do so). Finally, Delfin claims the Board erred in not reclassifying him IV-F or I-Y after the armed forces indicated on November 21, 1966 in the Statement of Acceptability that his induction was being held in abeyance on the ground that he was not currently acceptable for induction. Had the Board reclassified him at this time, it is argued, it could not merely have ordered him inducted in July 1967 but would have been required first to reclassify him I-A and, consequently, to have granted him rights to a personal appearance and an appeal. But the findings of the Army's medical examiners did not require Delfin's Board to place him in classification I-Y; in fact, a reading of the Statement of Acceptability as a whole reveals an intention on the part of the examiners that Delfin not be classified I-Y. Had they believed him entitled to this classification, they had only to check a blank on the Statement indicating that he had been "found not acceptable for induction under current standards," a finding which would have entitled him to be classified I-Y. The examiners did not do so; instead, they went to the effort of writing in a different finding, which could have been, and was, read by Delfin's Board to indicate not that he should be placed in classification I-Y but that his acceptability was not finally determined and remained in a status of review by Army medical experts.

Since Delfin did not deserve to be reclassified I-Y, he was *a fortiori* not entitled to a IV-F classification.

Affirmed.