**John Daniel FERRELL, Plaintiff,**

v.

**SELECTIVE SERVICE LOCAL BOARD NO. 38 OF WALNUT RIDGE, ARK., Col. Willard A. Hawkins and Transfer Board of the New York City Headquarters, Selective Service System, Defendants.**

**No. 70 Civ. 3642.**

United States District Court, S. D. New York.

Oct. 9, 1970.

John Daniel Ferrell, pro se.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Daniel H. Murphy, II, Asst. U. S. Atty., of counsel.

MANSFIELD, District Judge.

Plaintiff seeks a preliminary injunction restraining his induction into the armed forces and requiring his local board to reopen his I–A classification on the ground that following his receipt of a notice to report for induction he became a conscientious objector ("CO").

On January 23, 1963, plaintiff registered for the draft, and in May of that year was classified I–A. Thereafter, during his years in college and law school he was reclassified II–S (student deferment) until he completed law school in June, 1969. In June he was reclassified I–A, received by mail an order to report for a preinduction physical exam, and chose not to appeal his reclassification. After postponements he passed this exam and on May 20, 1970, was ordered to report for induction on June 9.

On May 26, after he received his induction order, he wrote his local board:

"I wish to apply for conscientious objector classification. Please send me SSS Form 150.

"As you know, I have not previously applied for a conscientious objector classification. However, in the last few days since I received the induction notice I have given this matter a great deal of thought, * * * and I have realised that participation in war in any form and participation in noncombatant service are in conflict with my deepest religious beliefs and training."

On May 28 Ferrell's local board mailed him Form 150 for conscientious objectors and on June 4 his board postponed his induction until July 1, 1970.

In response to questions on the Form 150, Ferrell replied on June 19 that he had been raised a Baptist, having been for years active in church affairs, founding the Baptist Student Union at Harvard. His college readings and studies had influenced him against violence. He had many times expressed opposition to the Viet Nam war, such as by signing anti-war petitions, participating in a lawyers movement against the war and in two anti-war marches in New York City. He conceded that during college he had "discussed conscientious objection with many different people, but at that time my views had not fully crystallized." Supporting letters from his wife and mother revealed that Ferrell had "always been opposed to the war and all the killing that had been going on with it."

On July 2 his local board wrote that it wished to interview him concerning his claim of conscientious objection, and on July 21 he had a 25-minute interview with three (out of five) of the local board members. They summarized the interview and their conclusions as follows:

"The registrant stated that his parents are Baptists and that is the religion he was brought up in and that he was an active member of First Baptist Church of this city before leaving his home to attend college in the East. He stated that he founded the Baptist Student Union at Harvard University and for two years served as president of that organization * * * that he also helped to establish a Southern Baptist mission at Cambridge, Massachusetts.

"The registrant stated that he is opposed to all wars but that he would serve in a civilian capacity. 'There are other forms of service that can be performed in lieu of the Armed Forces and I believe that I could serve that way.' However, he stated that he is opposed to ministering to the *military* sick and injured and to serving in the Armed Forces as a noncombatant.

"He stated that he had signed many anti-war petitions and that he had participated in two marches in New York City * * * that he had discussed his views on conscientious objection with a number of people during his college days, including members of his immediate family and his wife.

"He stated that he has always been strongly opposed to the fighting but that earlier in his life he thought it was something that had to be done, 'but I did not realize for sure just how I felt about it until I received my induction order'.

"The Board determined to NOT reopen the registrant's classification, feeling that his claim was not based on moral, religious, or ethical principles but rests instead on expediency. The expediency being that he wants to avoid the draft."

On the following day the board wrote Ferrell that his classification would not be reopened because there was "no change in [his] status resulting from circumstances over which [he] had no control." Ferrell wrote his state director of selective service requesting that his classification be reopened and his induction order be cancelled. This request

was denied. Ferrell then requested and was granted the right to transfer his induction to New York. On September 1, 1970, Ferrell was notified that pursuant to the outstanding order of May 26 he must report for induction on September 15, 1970. We temporarily stayed his induction pending our decision.

Ferrell seeks to enjoin this induction on the grounds that he has established a prima facie case for classification as a conscientious objector and that as a consequence the local board must reopen his case. A reopening would offer him important procedural advantages since, upon reopening, any action by the board would "have the effect of a new and original classification even though the registrant is again placed in the class that he was in before his classification was reopened." 32 C.F.R. § 1625.11. The most important effect of a new and original classification is that the registrant has the right to appear before the local board and to appeal within the selective service system. 32 C.F.R. § 1625.13. A reopening also cancels any Order to Report for Induction, 32 C.F.R. § 1625.14. Furthermore, the final disposition of an appeal within the system would require at least two (and probably more) months. Assuming he were then reclassified I–A we could reasonably expect that he would then claim further deferment on the ground that his induction order was issued after his 26th birthday, which falls on November 15, 1970. See Executive Order 11563 Amending the Selective Service Regulations (and specifically § 1631.7(d) (7)) signed by the President on September 26, 1970.

Ferrell's CO claim is governed by 32 C.F.R. § 1625.2 which provides:

"The local board *may* reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classifica-

tion; or (b) upon its own motion * * * provided, in either event, the classification of a registrant *shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant has no control."* (Emphasis added)

With respect to an application for a CO status *before* a local board mails an induction notice to the registrant, the Supreme Court in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), held that

"Where a registrant makes nonfrivolous allegations of facts that have not been previously considered by his Board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification, the Board must reopen the registrant's classification unless the truth of these new allegations is conclusively refuted by other reliable information in the registrant's file." *Id.* at 416, 90 S.Ct. at 1771.

To refuse to reopen the case, said the court, was an abuse of discretion. *Id.*

Ferrell argues that *Mulloy* requires reopening of his classification. The simple answer is that *Mulloy* related only to the proper interpretation of that part of § 1625.2 dealing with a request for reclassification *before* the mailing of an induction notice to the registrant. Other than to note in a footnote the distinction drawn by the regulation between applicants applying before and after notice of induction the Supreme Court in *Mulloy* did not deal with the regulation's specific provision governing the present case. Once a notice of induction has been sent to the registrant (as was the case here), the local board is expressly prohibited by the regulation from reopening his reclassification unless and until it first specifically finds at the threshold that there has been a change in his status due to circumstances over which he had no control. No

such finding was made here. On the contrary the board, after reviewing Ferrell's file and the evidence submitted by him, including his responses on the Form 150, and after granting him an interview, expressly found to the contrary.

■ There was ample evidence to support the board's refusal to make the specific finding mandated by § 1625.2 as a condition to reopening. To the extent that Ferrell might have views amounting to possible conscientious objection, he had expressed them for a long time prior to receipt of his notice of induction. For instance, he had repeatedly expressed himself as opposed to war and killing, and had implemented these views by marching in anti-war parades. Aside from Ferrell's demeanor, which the board had an opportunity to consider at the 25-minute interview or informal hearing, the record before us justified the conclusion that his decision, made six days after receipt of the induction notice, to claim the status of conscientious objector was put forward for the first time as a matter of expediency in view of the notice and that it actually reflected long-held views rather than a freshly crystallized or matured outlook. The local board's action, therefore, unlike that in *Mulloy*, was neither arbitrary nor unreasonable.

Under such circumstances Ferrell's application must be denied for the reason that

"It is settled in this circuit that once the notice to report for induction is received, a registrant is not entitled to reopen his classification, unless his beliefs crystallized subsequent to receiving that notice. United States v. Gearey, 368 F.2d 144 (2d Cir. 1966); United States v. Gearey, 379 F.2d 915 (2d Cir. 1967); Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970). * * * Nothing in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed. 2d 362 (1970), undermines this rule, as that case dealt with reopening classification prior to the registrant's receiving an induction notice." (United

States v. Reese, 432 F.2d 57, p. 58 (2d Cir. 1970).)

See in accord Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970); United States v. Delfin, 419 F.2d 226 (2d Cir. 1969); United States v. Beaver, 309 F.2d 273 (4th Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). Many other circuits even hold that maturing of conscientious objection after notice of induction is not a change in status over which the registrant has no control. United States v. Jennison, 402 F.2d 51 (6th Cir. 1968), cert. denied, 394 U.S. 912, 89 S.Ct. 1024, 22 L.Ed.2d 225 (1969); Ehlert v. United States, 422 F.2d 332 (9th Cir.), cert. granted, 397 U.S. 1074, 90 S.Ct. 1525, 25 L.Ed.2d 808 (1970); United States v. Schoebel, 201 F.2d 31 (7th Cir. 1953). The only cases that we have been able to find that support petitioner's view are in the Third Circuit, United States v. Underwood, 151 F.Supp. 874 (E.D.Pa.1955); United States v. Clark, 105 F.Supp. 613 (W.D.Pa.1952); cf. United States ex rel. Berman v. Craig, 207 F.2d 888 (3d Cir. 1953).

We recognize that where the board, in the case of a registrant requesting reclassification after receipt of notice of induction, refuses to make the specific finding essential to reopening of his classification the effect of the plain language of § 1625.2, as thus repeatedly upheld by the Second Circuit Court of Appeals, is to deny him the right of an administrative appeal which would have been permitted if he had sought reclassification before notice of induction. As was pointed out by Judge Kaufman in *Delfin* and by Judge Friendly in *Paszel*, however, the orderly administration of the Selective Service system requires that at some point there be an end to the availability of such administrative appellate procedure. If, upon receipt of a notice of induction, a draftee could, merely by setting forth a prima facie case in his request for reclassification, reopen his case within the Selective Service framework, he would have the power to delay his induction indefinite-

ly, asserting seriatim requests for reclassification. As each claim was rejected by the local board he could upon the 30th day appeal to the state board, which would then be required to make its decision, all of which would undoubtedly take more time. Assuming that the state board affirmed the local board's denial of reclassification, the local board would then be required to issue a new notice of induction. Upon receipt of the new notice the registrant could then assert a new prima facie claim as the basis for reopening and further similar delay. Although changes in Selective Service regulations have shortened the procedure for appellate consideration of CO claims,[1] it is readily apparent that through seriatim presentation of claims for reclassification (e. g., deferment for dependency, hardship, etc.) a registrant could frustrate the effective working of the system.

Against the possibility of such abuse of administrative procedures within the Selective Service system, it was entirely reasonable to provide that once a notice of induction was sent to the registrant his classification could not thereafter be reopened unless the local board first specifically found at the threshold that there had been a change in status resulting from circumstances over which he had no control.

For the foregoing reasons plaintiff's application for a preliminary injunction is denied and the outstanding temporary restraining order is rescinded.

It is so ordered.

[1]. Previously the local board's denial of a CO claim would be referred to the Justice Department which would hold a hearing "with respect to the character and good faith of the objections of the person concerned. * * *" 50 U.S.C.App. § 456(j) (1964). The F.B.I. would also compile a report for the Justice Department. The purpose of the Justice Department investigation was to place a more objective agency between the selective service system and the registrant. See United States v. Gearey, 368 F.2d at 148. However, in 1967 Congress revised the law and eliminated the Department of Justice intervention. P.L. 90–40. These revisions came after the *Seeger* case [U. S. v. Seeger] 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), when Congress was worried about the great increase in CO applicants and the resultant delays in their processing. See 1 U.S. Code Cong. & Admin.News, pp. 1334, 1348 (1967) and 50 U.S.C.A.App. § 456(j) (the present law).